Richard REED, individually and as administrator of the decedents' estates of Pamela Jo Reed and Jason Wesley Reed, and as guardian of the estates of Angela Reed and Marilyn Reed, minors, and Marilyn Kuykendall and Roy Kuykendall, Plaintiffs–Appellants,

v.

Trooper GARDNER, Chief Herman A. Davidson, City of Martinsville, Deputy Sheriff James F. Bender, Clark County, Illinois, Deputy Sheriff Jack Ragsdale and Jasper County, Illinois, Defendants–Appellees.

No. 91–3173.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1992.

Decided Feb. 23, 1993.

Mary Coffey (argued), St. Louis, MO, for plaintiffs-appellants.

Jan E. Hughes, Asst. Atty. Gen., Mark E. Wilson (argued), Office of the Atty. Gen., Civil Appeals Div., Chicago, IL, for defendant-appellee Thomas Gardner, Trooper.

Byron D. Knight, Janella L. Barbrow (argued), Elizabeth A. Knight, John J. Kohnke, Knight, Hoppe, Fanning & Knight, Des Plaines, IL, for defendants-appellees Herman A. Davidson and City of Martinsville.

Karen L. Kendall, Heyl, Royster, Voelker & Allen, Peoria, IL, John A. Ess, Kent L. Plotner, Heyl, Royster, Voelker & Allen, Edwardsville, IL, for defendants-appellees James F. Bender and Clark County.

William L. Berry, Jr., Dunham, Boman & Leskera, Belleville, IL, for defendants-ap-pellees Jasper County, IL, and Jack Ragsdale.

Before POSNER and FLAUM, Circuit Judges, and ZAGEL, District Judge.[*]

FLAUM, Circuit Judge.

The Reed family suffered a tragic accident on September 11, 1988, when a drunk driver crossed the center line of the highway and crashed into their car. Earlier that day, defendants Gardner, Davidson, and Bender had arrested the original driver of the car, leaving a drunk passenger behind. That passenger became the drunk driver who caused the head-on collision approximately two hours later. The plaintiffs appeal from the district court's dismissal of their section 1983 claims against Gardner, Davidson, and Bender, and from the dismissal of Jason Wesley Reed's claims. We reverse in part and affirm in part.

## I.

We review de novo the district court's decision on a motion to dismiss, assuming, as the district court must, the truth of all well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Prince v. Rescorp Realty*, 940 F.2d 1104, 1106 (7th Cir.1991). According to the complaint, Richard Reed was driving a Chevrolet Suburban north on Illinois Route 130 in Jasper County at midafternoon on September 11, 1988. His wife Pamela Jo Reed, who was eight months pregnant, sat next to him, and their young daughters Angela and Marilyn Reed sat in the back with Pamela's parents Roy and Marilyn Kuykendall. Larry Rice was driving south on Route 130 when he crossed the center line and collided head on with the Reed's car. He was intoxicated at the time of the crash and was being pursued at high speeds by defendant Deputy Sheriff Jack Ragsdale. Pamela Jo Reed died of her injuries, as did the fetus she carried, Jason Wesley Reed. Marilyn Reed

[*] The Honorable James B. Zagel, District Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

suffered brain damage with post-traumatic encephalopathy and seizures, and several broken bones. Richard and Angela Reed sustained minor physical injuries, and both suffer severe emotional trauma. The Kuykendalls suffered broken bones and internal injuries, in addition to emotional trauma.

Approximately two hours before the accident, defendants State Trooper Thomas Gardner, Chief Herman Davidson of the Martinsville Police Department, and defendant Deputy Sheriff James Bender of the Clark County Sheriff's Department arrested Cathy Irby in Clark County. They left Larry Rice, who had been riding in Irby's car, inside the car with Irby's car keys, although they knew or should have known that Rice was intoxicated.

The district court dismissed Count X of the appellants' complaint, ruling that under *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) appellants could not state a claim for deprivation of constitutional rights. The Supreme Court in *DeShaney* held that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.,* 489 U.S. at 197, 109 S.Ct. at 1004. The district court began with the premise that "the thrust of the allegation[s] is that the defendants failed to prevent Rice from [operating] the vehicle", rejecting the plaintiffs' emphasis on the defendants' affirmative action in arresting Irby and "entrusting the car to Rice." Unfortunately, the district court then went outside the pleadings to distinguish cases finding section 1983 liability; it held that the police did not create the dangerous situation in this case because Cathy Irby herself was arrested for driving while intoxicated.

The pleadings, however, contain no allegation, nor can a reasonable inference be drawn, that Cathy Irby was intoxicated when the defendants arrested her. At least one defendant brought to the district court's attention the reason for Irby's arrest, that she was driving while intoxicated. The appellants admit in their brief that this was the reason for Irby's arrest, yet it cannot support the defendants' motions to dismiss. The district court might have converted its ruling to one of summary judgment, and noted the additional crucial fact outside the pleadings. The plaintiffs might have filed a motion for reconsideration based on the inclusion of a fact outside the pleadings. Instead, the district court dismissed the count, relying on Irby's intoxication, and the plaintiffs appealed. We cannot affirm the district court's ruling based on its reasoning.

Assuming the truth of the allegations in the pleadings and making reasonable inferences for the plaintiffs, we must decide whether injured parties can state a claim under section 1983 when police officers arrest a sober driver and leave behind an obviously drunk passenger who takes the wheel. We can affirm only if in that situation *DeShaney* forecloses an action for a civil rights violation. Because on remand the defendants undoubtedly will offer proof of the reason for Irby's arrest, however, we will also address the outcome if the plaintiffs had plead that Irby was intoxicated or if summary judgment had been granted on that basis.

## II.

■ The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." According to the Supreme Court, the purpose of the Due Process Clause was "to protect the people from the State, not to ensure that the State protected them from each other." *DeShaney,* 489 U.S. at 196, 109 S.Ct. at 1003. Initially, affirmative obligations to protect certain citizens grew out of prison situations, in which the state deprived prisoners of the liberty to care for themselves, *see Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and involuntary commitment of mental patients, for the same reason, *see Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). The guiding principle of these cases is that, when a state takes custody of a person, "the Con-

stitution imposes upon it a corresponding duty" for his protection. *DeShaney*, 489 U.S. at 200, 109 S.Ct. at 1005. Inaction by the state in the face of a known danger is not enough to trigger the obligation; according to *DeShaney*, the state must have limited in some way the liberty of a citizen to act on his own behalf.

*DeShaney's* emphasis on the state's obligation under the Due Process Clause to those in its custody seems at first to prevent plaintiffs from proceeding under section 1983. Not only were the Reeds never in custody, they had never encountered the defendants. The defendants did not even take Rice into custody. *DeShaney*, however, leaves the door open for liability in situations where the state creates a dangerous situation or renders citizens more vulnerable to danger. *Id.*, 489 U.S. at 201, 109 S.Ct. at 1006 ("While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them.... [I]t placed him in no worse position than that in which he would have been had it not acted at all...."); *see also Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992) (en banc) ("[T]he Due Process Clause imposes a duty on state actors to protect or care for citizens in two situations: first, in custodial and other settings in which the state has limited the individuals' ability to care for themselves; and second when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.") (citations omitted). Police officers who remove sober drivers and leave behind drunk passengers with keys may be said to create a danger or at least render others on the road more vulnerable. Certainly the Reeds are worse off with a

drunk driver heading toward them than a sober one.

The complaint accuses defendants Gardner, Davidson, and Bender of infringing the rights of the appellants by creating a dangerous situation and failing to protect them from it.[1] This case, therefore, is distinguishable from cases in which state actors had no hand in creating a danger but "stood by and did nothing when suspicious circumstances dictated a more active role for them." *DeShaney*, 489 U.S. at 203, 109 S.Ct. at 1007; *see, e.g. Archie v. City of Racine*, 847 F.2d 1211 (7th Cir.1988) (en banc), *cert. den.* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989) (no § 1983 liability for failure to provide requested emergency services). *DeShaney* and its progeny make it clear that the police have no affirmative obligation to protect citizens from drunk drivers. Taken to an extreme, police officers could watch drunk drivers stumble to their cars and drive off, weaving across the road, without incurring section 1983 liability. Similarly, if the defendants had failed to arrest Irby, they would have had no liability if she had exchanged places with Rice and he had driven headlong into the Reed's car. It was the police action in removing Irby, combined with their knowledge of Rice's intoxication, which creates their liability for the subsequent accident.

Our holding makes it clear that the Reeds face an insurmountable hurdle on summary judgment. As the district court foreshadowed, police officers are not subject to liability under section 1983 for exchanging one drunk driver for another. The reason is simple: without state intervention, the same danger would exist. The state action did not place individuals in a position of danger that otherwise they would not have faced. The Reeds are no worse off with Irby driving while intoxicat-

1. The complaint alleges that the defendants "left ... Rice inside Irby's car with Irby's keys, thereby entrusting the car to Rice...." Appellants and appellees argue over whether this language asserts affirmative conduct or mere inaction. This debate should not detain us. The allegations of the complaint allow reasonable inferences that the defendants left Rice behind, knowing that he was intoxicated and that the

keys were in the car. It does not permit inferences that the police handed the keys to Rice, left the car running, or encouraged Rice to drive himself home. The affirmative conduct comes from arresting and removing Irby while knowing that a drunk passenger with the keys remained in the car. That is sufficient for the Reeds, after being injured by the drunk passenger, to state a claim under section 1983.

ed than they are with Rice driving while intoxicated.[2] Therefore, the evidence of Irby's intoxication supports a finding of summary judgment on the claim for civil rights violations.

Even if Irby had not been intoxicated, the defendants might have prevailed on a summary judgment motion if the plaintiffs could offer no support for the allegation that the officers "knew or should have known that Rice was intoxicated." The Eighth Circuit recently grappled with a similar case, in which the police arrested a sober "designated" driver and left intoxicated passengers in the car. *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir.1992) (en banc). After detaining the driver for running a red light, police officers discovered an outstanding arrest warrant for him. The officers allowed the driver to follow them to the police station in his car with his passengers. After the sober driver entered the station, one passenger who was intoxicated drove the car and became involved in a car accident that killed him and injured the other passenger. The Eighth Circuit majority affirmed summary judgment, holding that no reasonable factfinder could have concluded that the officers knew or should have known that the passengers were intoxicated. *Id.* at 1010–11.[3] Like the Eighth Circuit, we would require from a plaintiff sufficient evidence from which a jury could reasonably draw the inference that police officers knew or should have known that car passengers were intoxicated. *See id.* at 1011 (appellants' evidence supported "nothing more than a mere supposition—a possibility or guess ..." that the two adult passengers were intoxicated). Because the district court dismissed the Reeds' case, we do not know what evidence would support such knowledge by the defendants.

■ While we have been hesitant to find section 1983 liability outside the custodial setting, *see, e.g. Losinski v. County of Trempealeau*, 946 F.2d 544 (7th Cir.1991); *Archie v. City of Racine*, 847 F.2d 1211 (7th Cir.1988) (en banc), we find that plaintiffs such as the Reeds may state claims for civil rights violations if they allege state action that creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger that they otherwise would have been. *See Ross v. United States*, 910 F.2d 1422 (7th Cir.1990) (plaintiff whose son drowned stated § 1983 claim where arbitrary county policy prevented private assistance and failed to provide state assistance). Our recent decision in *Losinski v. County of Trempealeau*, 946 F.2d 544 (7th Cir.1991) evidences a narrow but critical distinction. In *Losinski*, a sheriff's deputy accompanied a woman, at her request, to her estranged husband's trailer where she intended to retrieve some belongings. The deputy did not intervene in an ensuing dispute between Julie Losinski and her husband until the husband produced a gun and shot her. Although we found the issue to be close, we determined that the state did not create or enhance the danger Losinski faced, and therefore *DeShaney* precluded section 1983 liability. *Id.* at 550–51. Julie Losinski enlisted the state's assistance in confronting a known danger, and that assistance fell short of protecting her from harm. The officers in this case initiated the state action, by arresting Irby and removing her from the car. That state intervention created the dangerous condition, a drunk driver on the road.

The defendants' lack of direct contact with the appellants does not necessarily

---

2. The appellants argue that Rice was more intoxicated and thus more dangerous. We cannot foresee imposing liability based on that type of hairsplitting. The officers' knowledge of the intoxication of those with car keys will be the standard. Otherwise, we run the risk of demanding, under the same line of reasoning, distinctions between which driver was more adept or experienced or well-rested.

3. The majority also decided that, even if the officers had known the passengers were intoxicated, they could not be found liable for leaving the passengers in the car. Because the officers left the passengers in the care of their designated driver, it was that driver's negligence in leaving them with car keys that created the danger. *Id.* at 1011–12. We have no need to decide whether a sober driver in that situation must bear full responsibility for the subsequent actions of his intoxicated passengers.

preclude this action against them. By removing a safe driver from the road and not taking steps to prevent a dangerous driver from taking the wheel, the defendants arguably changed a safe situation into a dangerous one. The dangers presented by drunk drivers are familiar and specific; in addition, the immediate threat of harm has a limited range and duration. *See Nishiyama v. Dickson County,* 814 F.2d 277, 280 (6th Cir.1987) (en banc) (§ 1983 liability found where inmate uses patrol car to detain motorist whom he then murders, "identity of potential victims [not] difficult to define"); *cf. Bowers v. DeVito,* 686 F.2d 616 (7th Cir.1982) (no state action link to murder based on release of mental patient one year earlier). When the police create a specific danger, they need not know who in particular will be hurt. Some dangers are so evident, while their victims are so random, that state actors can be held accountable by any injured party. Despite the two hour time lapse and the distance between the place of Irby's arrest and the car accident, the events are not sufficiently attenuated to relieve the defendants of section 1983 liability. *Cf. Martinez v. California,* 444 U.S. 277, 286, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980) (five months since release of parolee makes girl's murder "too remote a consequence" of state action for civil rights liability to attach).

This case presents an indisputably close question. The defendants' alleged actions do not involve the same type of shocking conduct as in *Nishiyama* where deputies gave a fully equipped, clearly marked patrol car to a felon in custody and ignored the risks to motorists even after they were told that he was stopping cars at the roadside. These defendants, however, did engage in reckless conduct similar to the officer who left a passenger alone and on foot in a high crime area (*Wood v. Ostrander,* 879 F.2d 583 (9th Cir.1989), *cert. denied,* 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990)) or the officers who arrested a driver and left young children stranded on the highway (*White v. Rochford,* 592 F.2d 381 (7th Cir.1979)). While they did not create the danger by buying Rice drinks and providing him with a car, they did take action under color of state law which rendered the Reeds and the other motorists on Route 130 vulnerable to a dangerous driver.

■ The great difficulty in this case is in judging precisely what the defendants ought to have done that they did not do. While we do not seek to expand any existing duties for police officers, we do suggest that officers may be subject to suit under section 1983 if they knowingly and affirmatively create a dangerous situation for the public and fail to take reasonable preventative steps to diffuse that danger. Thus, removing one drunk driver and failing to prevent replacement by another drunk will not subject officers to section 1983 liability, any more than an initial failure to remove the first drunk driver would. Further, removing one drunk driver and leaving behind seemingly sober adult passengers could not subject them to liability. Extraordinary measures are not required; the yardstick will be reasonable action based on the specific circumstances confronting the officers on the scene, subject to their immediate capabilities and the possible limitations inherent to a highway or street patrol response. For example, police officers do not have to search for an extra set of keys or other means of starting the car, nor do they have to make sure a passenger is carrying a valid driver's license. They need not ferry stranded passengers who would otherwise be inconvenienced, absent a rare combination of factors that turns the inconvenience into a real and obvious danger. It is the special circumstance plead in this case, that the defendants removed a driver, who it must be inferred was sober, and left behind a passenger, whom they knew to be drunk, with the car keys, that states a claim for deprivation of constitutional rights under 42 U.S.C. § 1983.

### III.

■ Two additional issues remain. The appellants contest the district court's dismissal of Jason Wesley Reed's claims on the basis that a fetus cannot state a claim under section 1983. We agree with the

district court. Claims may be brought under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment. This circuit has already concluded that fetuses are not persons within the scope of the fourteenth amendment. *Keith v. Daley,* 764 F.2d 1265, 1271 (7th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985), *citing Roe v. Wade,* 410 U.S. 113, 158, 93 S.Ct. 705, 729, 35 L.Ed.2d 147 (1973). A state's protection of fetuses from criminal conduct cannot create new rights under, nor expand the scope of, the Fourteenth Amendment. Illinois' recognition of fetal life in several of its criminal statutes does not affect the appellant's claims under section 1983. Every state right does not have a corresponding federal constitutional protection. The district court correctly dismissed the claims of the fetus.

 The appellees claim that the district court abused its discretion in granting an extension for a timely appeal. The plaintiffs initially filed an appeal under the name "Richard Reed, etc., et al."; this heading does not suffice. *See Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988) (final judgment affirmed as to intended appellant whose name was omitted by clerical error). Rule 3(c) requires that a notice of appeal "shall specify the party or parties taking the appeal. . . ." Fed.R.App.P. 3(c).[4] When an order of this court informed them of the deficiency, the appellants went back to the district court which granted the extension.

According to the Supreme Court, Rule 3(c) presents an inflexible jurisdictional requirement for proper notice of appeal. In *Torres,* the Court specifically considered and rejected the possibility that "et al." could preserve an appeal for an unnamed party. *Torres,* at 318, 108 S.Ct. at 2409. Previously we have permitted an extension for excusable neglect, at the discretion of the district court, where the named and unnamed parties had "identical interests," so that the notice of appeal left "no room

for doubt as to who is taking the appeal." *Albedyll v. Wisconsin Porcelain Co. Rev. Ret. Plan,* 947 F.2d 246, 253 (7th Cir.1991). In this case, however, the appellants each pursue separate claims for their injuries, none dependent on another in order to appeal. An appellant's misunderstanding of Rule 3(c) and ignorance of *Torres* and recent caselaw in this circuit cannot constitute excusable neglect. The appellees had notice within thirty days that Richard Reed would appeal. It is on his appeal, individually and in his other capacities, that we rule today. We find, however, that the district court's extension of time for excusable neglect cannot preserve our jurisdiction over the Kuykendalls' appeal.

The judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART.

POSNER, Circuit Judge, dissenting in part.

I join Part III of the court's opinion, but would avoid reaching the difficult constitutional question whether, if Irby (the driver whom the police arrested) had been sober, the complaint might have stated a claim for relief under the due process clause of the Fourteenth Amendment.

The defendants' briefs state that Irby was arrested for driving while intoxicated and was in fact intoxicated. The plaintiffs filed a reply brief but did not allude to the statement, so at argument we pressed their counsel on the question. She did not admit that Irby had been arrested for drunk driving or had been drunk, but neither did she deny it—she said it was not in the record. The court interprets this response as an admission and goes on to say that, because of the admission, "the Reeds face an insurmountable hurdle on summary judgment." The problem is that the district judge did not grant summary judgment; he dismissed the case on the pleadings.

It is not obvious what difference that should make. This court has said, in effect, that the case is moot, because the only

---

4. The text of Rule 3(c) does not contain a citation to *Torres* nor a specific reference to the inadequacy of the use of "et al."

theory on which the law entitles the plaintiffs to recover requires that Irby have been sober when she was arrested. If she was drunk, then by arresting her the police did not create a danger to the Reeds or anyone else, for if they hadn't arrested her the car would still have been driven by a drunk driver, one as likely to cause an accident as the drunk who replaced Irby when she was arrested. If she was drunk, then when the defendants move for summary judgment on remand it will be granted and we will affirm, should the plaintiffs be foolish enough to appeal. We should not pronounce on legal questions, let alone constitutional questions, let alone difficult constitutional questions, in a case in which our answers cannot alter the outcome.

It is true that when a case is dismissed on the ground that the complaint fails to state a claim, and the dismissal is appealed, the appellate court will often find itself deciding legal issues, including difficult constitutional issues, on the basis of "facts" that, being merely the facts alleged by the plaintiff in the complaint, may well be false, and the true facts may raise no legal issues at all. But it is one thing to decide a case on facts that may be false, and another to decide it on facts known to be false.

There is no insurmountable procedural obstacle to our disposing of this case without reaching the constitutional issues. A district judge can, of course, grant summary judgment on his own initiative, provided the substantive standard (no genuine issue of material fact) of Rule 56 is met and the nonmovant had adequate notice. *Russell v. PPG Industries, Inc.*, 953 F.2d 326, 332 n. 4 (7th Cir.1992); *Macon v. Youngstown Sheet & Tube Co.*, 698 F.2d 858, 861 (7th Cir.1983). That is proposition number one. And when a judge resolves a case on summary judgment, our review is plenary, *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir.1993); so it is as if *we* were granting summary judgment. Which is proposition number two. It follows from these two propositions that we can grant summary judgment ourselves, and on our own initiative, in an appropriate case. I can find no case in which this was

done, but *Experimental Engineering, Inc. v. United Technologies Corp.*, 614 F.2d 1244, 1247 (9th Cir.1980), suggests that it is a proper procedure in an appropriate case. Cf. *American Nurses' Association v. Illinois*, 783 F.2d 716, 729 (7th Cir.1986).

Is this an appropriate case? Admissions are trumps for purposes of Rule 56. *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 334 (7th Cir.1993); *Maksym v. Loesch*, 937 F.2d 1237, 1241 (7th Cir.1991). But we have an inferred rather than an explicit admission, and we have not given notice to the plaintiffs of any intention to grant summary judgment. While I think an affirmance could be defended, I would be more comfortable with a remand for the limited purpose of allowing the district judge to conduct a summary-judgment proceeding that would in all likelihood enable this case to be resolved without our having to decide any constitutional questions.