**Ladonna J. GRAHAM, as Personal Representative of Charles W. Graham, deceased, Plaintiff–Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. I–89, Oklahoma County, Oklahoma, Defendant–Appellee.**

**Paula POINTER, as Mother and Next Friend of Benjamin P. Pointer, a minor under the age of eighteen years, Plaintiff–Appellant,**

v.

**WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT, Defendant–Appellee.**

Nos. 93–6075, 93–6107.

United States Court of Appeals, Tenth Circuit.

April 20, 1994.

Mark Hammons of Hammons & Associates, Oklahoma City, OK, for plaintiffs-appellants.

Stacey L. Haws (Chris J. Collins with her on the briefs), Manchester, & Healy, Oklahoma City, OK, for defendant-appellee Independent School Dist. I–89.

Don R. Martin, Jr. (Reggie N. Whitten with him on the briefs), Mills, Whitten, Mills, Mills, & Hinkle, Oklahoma City, OK, for defendant-appellee Western Heights Independent School Dist.

Before MOORE and EBEL, Circuit Judges, and VRATIL, District Judge.*

JOHN P. MOORE, Circuit Judge.

In these cases, plaintiffs appeal the district court's dismissal of their civil rights complaints.[1] Plaintiffs maintain defendant school districts breached their constitutional duty to protect students from the actions of third parties. We are poignantly aware of the seeming transformation of our public schools from institutions of learning into crucibles of disaffection marred by increasing violence from which anguish and despair are often brought to homes across the nation. Yet, defendant school districts neither entered

---

* Honorable Kathryn H. Vratil, United States District Court Judge for the District of Kansas, sitting by designation.

1. While these cases were not consolidated, we deal with them jointly in this opinion because of the similarity of the issues presented.

into a custodial relationship with their students, nor did they create or augment the danger posed by the aggressors. Therefore, as the law unquestionably mandates, we affirm the district court's orders dismissing plaintiffs' claims.[2]

Plaintiff Ladonna J. Graham brought suit under 42 U.S.C. § 1983 against defendant Independent School District No. I–89. She alleges another student shot and killed her son, Charles William Graham, Jr., while he was in defendant's care and custody. Maintaining school district employees had received warnings that a student who had threatened violence against Charles was on school grounds with a gun, plaintiff asserts the failure of defendant to react to this known threat violated the Due Process Clause of the Fourteenth Amendment.

Plaintiff Paula Pointer also brings a Fourteenth Amendment claim under § 1983. Ms. Pointer's son, Benjamin P. Pointer, was stabbed while on school premises. Plaintiff Pointer alleges defendant Western Heights Independent School District knew or should have known of the danger to her son but failed to take action to secure his safety.

In both cases, defendant school districts filed Fed.R.Civ.P. 12(b)(6) motions to dismiss. Finding Supreme Court and Tenth Circuit precedent controlling, the district court dismissed the constitutional claims without leave to amend. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Maldonado v. Josey*, 975 F.2d 727 (10th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993).[3] Plaintiffs appeal the trial court's dismissals, arguing the quasi-custodial nature of the public schools coupled with defendants' knowledge of a specific threat of harm gives rise to a cognizable constitutional claim under the Fourteenth Amendment.

■ We review the dismissals de novo and construe the allegations of the complaints as true and in the light most favorable to the plaintiffs. Dismissal is proper only if it appears beyond doubt plaintiffs can prove no set of facts in support of the claim which would entitle them to relief. *Ash Creek Mining Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir.1992).

■ Plaintiffs' allegations are straightforward and concise. They aver defendants knew that Charles Graham and Benjamin Pointer were in danger of being harmed by their fellow students but failed to take appropriate measures. Thus, plaintiffs contend the school districts had an affirmative constitutional duty to protect the students not only from the actions of the State and its agents, but also from the danger posed by unrelated third parties.

In deciding whether the plaintiffs have pled a cognizable claim, we must determine whether they can allege the deprivation of a constitutional right. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). To analyze the validity of plaintiffs' assertions of Fourteenth Amendment deprivation, we look first to *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

In *DeShaney*, the Wisconsin Department of Social Services received several reports that a four-year old boy, Joshua, was suffering abuse at the hands of his father. Despite these reports, the State failed to remove Joshua from his father's custody. Eventually, Joshua's father struck him so severely the boy suffered permanent brain damage. Joshua and his mother brought suit, alleging the State had violated the Fourteenth Amendment by failing to intervene on his behalf.

Holding that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors," the Supreme Court flatly rejected

---

**2.** Both dismissal orders were issued by the same district court.

**3.** The court also dismissed plaintiffs' state law claims without prejudice to refiling. While plaintiff Graham asserts the district court adjudicated her state law claims, we believe the district court's order dismissing her action does not bar the refiling of her pendent claims in state court. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

**994**

plaintiff's argument. 489 U.S. at 195, 109 S.Ct. at 1003. However, the *DeShaney* Court fashioned a narrow exception to this general rule, holding a duty of protection may arise when the State imposes limitations upon an individual to act on his or her own behalf. "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect [an individual's] liberty interests against harms inflicted by other means." *Id.* at 200, 109 S.Ct. at 1006.

Accordingly, if "the State takes a person into its custody and holds him there against his will," it also assumes some measure of a constitutionally-mandated duty of protection. *DeShaney* at 199–200, 109 S.Ct. at 1005–1006. The Court indicated either institutionalization or incarceration will trigger this duty. *See Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Nonetheless, *DeShaney* left undefined the precise measure of state restraint that engenders an individual's right to claim a corresponding affirmative duty.

Following *DeShaney,* this court examined the custodial nature of compulsory school attendance laws. In *Maldonado v. Josey,* 975 F.2d 727 (10th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993), an unsupervised student, Mark Maldonado, accidentally choked to death in a school cloakroom. His father filed a Fourteenth Amendment claim under 42 U.S.C. § 1983, asserting that Mark's death had occurred as a direct result of his teacher's failure to supervise her students.[4] Rea-

soning substantive due process was not directly implicated, the *Maldonado* court concluded "compulsory attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school." 975 F.2d at 732; *accord Dorothy J. v. Little Rock Sch. Dist.,* 7 F.3d 729, 732 (8th Cir.1993) ("state-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect it owes to prison inmates"); *D.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364 (3d Cir.1992) (en banc) (compulsory attendance laws do not create special relationship), *cert. denied,* — U.S. —, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *J.O. v. Alton Community Unit Sch. Dist. 11,* 909 F.2d 267, 272–73 (7th Cir.1990) ("School-children are not like mental patients and prisoners such that the State has an affirmative duty to protect them.").

■ Thus, we have clearly held compulsory school·attendance laws do not spawn an affirmative duty to protect under the Fourteenth Amendment.[5] Nonetheless, plaintiffs urge *Maldonado*'s holding does not foreclose the existence of a constitutional tort where a student is the victim of a *foreseeable* assault.[6] Arguing the school had knowledge of the violent propensities of one of its students, plaintiffs maintain this knowledge, coupled with the quasi-custodial nature of school attendance, satisfies the standards articulated in *DeShaney.*

■ We hold foreseeability cannot create an affirmative duty to protect when plaintiff remains unable to allege a custodial relationship. As in *DeShaney,* where the "State knew that Joshua faced a special danger of abuse at his father's hands.... [t]he most that can be said of the state functionaries in

4. The complaint also asserted claims against the teacher's supervisors. However, these claims were not pursued on appeal.

5. The Okla. Const. art. XIII, § 4 states "The Legislature shall provide for the compulsory attendance at some public or other school, unless other means of education are provided, of all the children in the State who are sound in mind and body, between the ages of eight and sixteen years, for at least three months in each year."

We note plaintiffs failed to allege this constitutional provision was applicable. However, since we follow *Maldonado* in holding compulsory attendance laws do not create an affirmative duty of protection, this omission is irrelevant.

6. Plaintiffs make a number of additional arguments concerning *Maldonado*'s application. Suffice to say we deem these arguments unpersuasive and decline to specifically address them.

this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." 489 U.S. at 197, 203, 109 S.Ct. at 1004, 1007. We are thus constrained to conclude because no special relationship existed between the plaintiffs and defendants, defendants' alleged nonfeasance in the face of specific information which would mandate action does not invoke the protections of the Due Process Clause. "Inaction by the state in the face of a known danger is not enough to trigger the obligation; according to *DeShaney* the state must have limited in some way the liberty of a citizen to act on his own behalf." *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.), *cert. denied*, ── U.S. ───, 114 S.Ct. 389, 126 L.Ed.2d 337 (1993). In the absence of a custodial relationship, we believe plaintiffs cannot state a constitutional claim based upon the defendants' alleged knowledge of dangerous circumstances.

■ From plaintiffs' amended complaints, briefs and oral arguments, we believe plaintiffs propose a second theory of recovery, suggesting that defendants took affirmative actions which created or increased the danger to the plaintiffs.[7] Many courts have noted that *"DeShaney* ... leaves the door open for liability in situations where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Reed*, 986 F.2d at 1125 (citing *DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006); *Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir.1993). This state-created danger doctrine "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) (citations omitted), *cert. denied*, ── U.S. ───, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993). Because plaintiffs cannot point to any affirmative actions by the defendants that created or increased the danger to the victims, this argument must also fail.

Contrary to plaintiffs' suggestions at oral argument, defendants did not create a hazardous situation by placing the aggressor and victim in the same location. Notwithstand-

ing defendants' specific knowledge of the propensities of the aggressors, any danger to the victims was "too remote a consequence of [defendants'] action to hold them responsible under the federal civil rights law." *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980). "In most every circuit court decision imposing § 1983 liability because the State affirmatively created or enhanced a danger, 'the immediate threat of harm has a limited range and duration' unlike the indefinite risk created by enrolling [the aggressor] in public school." *Dorothy J.*, 7 F.3d at 733 n. 4 (quoting *Reed*, 986 F.2d at 1127). As conceded by the plaintiffs, in this case the aggressors' enrollment preceded any knowledge of danger. We conclude, therefore, defendants' "affirmative actions" neither created nor increased the danger to the victims.

**AFFIRMED.**

---

7. We do not read either of the complaints as asserting claims that defendants deliberately and recklessly established and maintained a custom, practice or policy which caused harm to the plaintiffs.