**Hany F. KOULTA, Personal Representative of the Estate of Sami F. Koulta, Plaintiff,**

v.

**CITY OF CENTERLINE, Officer Daniel Merciez, Officer Robert Wroblewski, and Officer Steven Hilla, Defendants.**

No. CIV.04–40343.

United States District Court, E.D. Michigan, Southern Division.

March 31, 2006.

Rubin and Rubin, by Iris E. Rubin, Farmington Hills, for Plaintiff.

O'Connor, DeGrazia, by James I. De-Grazia, Bloomfield Hills, for Defendants.

## ORDER ACCEPTING REPORT AND RECOMMENDATION

GADOLA, District Judge.

This is a civil rights action under 42 U.S.C. §§ 1983 and 1988 in which Plaintiff has named the City of Centerline, Officer Merciez, Officer Wroblewski, and Officer Hilla as Defendants. Before the Court is the Defendant Officers' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or for summary judgment pursuant to Fed. R.Civ.P. 56, filed on June 20, 2005 and the Report and Recommendation of Magistrate Judge R. Steven Whalen filed on February 16, 2006. After realizing that he did not address Defendants' motion fully, the Magistrate Judge issued a Supplemental Report and Recommendation on February 28, 2006. Combined, the Magistrate Judge recommends that Defendants' motion be granted with respect to Plaintiff's equal protection claim and denied in all other respects. Defendants filed objections to the report and recommendation on February 27, 2006, Plaintiff responded on March 8, 2006, and Defendants replied on March 13, 2006.

■■■ The Court's standard of review for a Magistrate Judge's Report and Recommendation depends upon whether a party files objections. If a party does not object to the Report and Recommendation, the Court does not need to conduct a review by any standard. *See Lardie v. Birkett,* 221 F.Supp.2d 806, 807 (E.D.Mich. 2002) (Gadola, J.). If a party objects to portions of the Report and Recommendation, the Court reviews those portions de novo. *Lardie,* 221 F.Supp.2d at 807. The Federal Rules of Civil Procedure dictate this standard of review in Rule 72(b), which states, in relevant part, that

> [t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after addi-

tional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b). Here, because Plaintiff filed objections, this Court reviews de novo those portions to which an objection has been made. *See Lardie,* 221 F.Supp.2d at 807.

■■■ De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's Report and Recommendation. *See* 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3070.2 (1997); *see also Hill v. Duriron Co.,* 656 F.2d 1208, 1215 (6th Cir.1981). The Court may supplement the record by entertaining additional evidence, but is not required to do so. 12 Wright, Federal Practice § 3070.2. After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie,* 221 F.Supp.2d at 807. If the Court accepts a Report and Recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record and adopts the Report and Recommendation. *See id.;* 12 Wright, Federal Practice § 3070.2.

The Court has reviewed the Report and Recommendation, the Supplemental Report and Recommendation, Defendants' objections, Plaintiff's response and Defendants' reply, along with the underlying evidence and filings in the record. Having conducted this review under the de novo standard as detailed above, the Court con-

cludes that the Magistrate Judge's reasoning and conclusions are sound.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' objections [docket entry 49] are **OVERRULED**, and the Report and Recommendation [docket entry 47] and the Supplemental Report and Recommendation [docket entry 50] are **ACCEPTED** and **ADOPTED** as the opinion of this Court.

**IT IS FURTHER ORDERED** that the Defendant Officers' motion [docket entry 14] is **GRANTED** with respect to Plaintiff's equal protection claim and **DENIED** in all other respects, and Plaintiff's equal protection claim against the Defendant Officers is **DISMISSED**.

**SO ORDERED.**

## REPORT AND RECOMMENDATION [1]

Plaintiff Hany F. Koulta, acting as Personal Representative of the estate of Sami F. Koulta, has filed a civil rights action under 42 U.S.C. §§ 1983 and 1988, naming the City of Centerline, Officer Daniel Merciez, Officer Robert Wroblewski and Officer Steven Hilla as Defendants.[2] Before the Court is a Motion to Dismiss for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment Pursuant to Fed.R.Civ.P.56. or 12(b)(6), filed June 20, 2005 (Docket # 14) by Defendants Merciez, Wroblewski, and Hilla. The matter has been referred for a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be **DENIED** as to Defendants Merciez, Wroblewski, and Hilla.

## I. BACKGROUND FACTS

In the early hours of September 13, 2002, the Centerline, Michigan Police Department received a call from a resident homeowner, Francis Offrink, reporting that "an unwanted person" was at her home. *Complaint* at ¶ 9. Defendant Merciez arrived sometime between 2:15 and 2:20 a.m., followed by Defendants Wroblewski and Hilla, who arrived in a separate patrol car. *Id.* at ¶ 10. After Defendant Merciez questioned the homeowner and the "unwanted person," Chrissy Lynn Lucero, Defendants ordered Lucero to leave the premises at approximately 2:25–2:30 a.m. *Id.* at 13. None of the Defendants administered a preliminary breath test to Lucero, determined whether she held a valid driver's license, or possessed any outstanding felony arrest warrants. *Id.* In response to the officers' directions to depart, she left the premises by automobile. Within twelve minutes, Lucero, having driven from Centerline into an adjacent city, broadsided the vehicle of Sami Koulta, killing him instantly. *Id.* at 14. Lieutenant Bruce Hamel of the Sterling Heights Police Department arrived at the scene within moments of the accident, noting that Lucero smelled strongly of alcohol. *Id.* at Exhibit 2, *Testimony of Bruce Hamel* at pgs. 45–48. Observing that Lucero also exhibited slurred speech, red, and watery eyes, and had urinated on herself, he testified that he determined "within a couple minutes" that she was intoxicated. *Id.* at Exhibit 2, pgs 46, 48, 49. He reported that upon his arrival, a number of bystanders at the accident scene were surrounding Lucero, haranguing her for killing Koulta. *Id.* at pg. 45. He testified that Lucero, distraught, stated repeatedly

---

1. Law Clerk Amy J. Humphreys provided invaluable assistance in the preparation of this Report and Recommendation.

2. On December 7, 2004, the Honorable Paul V. Gadola dismissed Counts three though five of the complaint, declining to exercise supplemental jurisdiction over Plaintiff's state law claims (Docket # 2).

that the Defendant police officers "made" her drive despite the fact that she knew she was "too drunk to drive." *Id.* at pg. 50.

Lucero subsequently pleaded guilty to second degree murder. Plaintiff filed a civil action against Lucero in Macomb County Circuit Court (*Koulta v. Lucero,* Case no. 03–003413–ND). On May 23, 2005, Circuit Court Judge Richard L. Caretti issued a judgment against Chrissy Lynn Lucero and Ann Marie Lucero (Lucero's grandmother and the owner of the car in question) jointly and severally for Seven Hundred Fifty Thousand ($750,-000) in connection with the death of Sami Koulta. *Motion to Dismiss* at Exhibit C.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California,* 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a mo-

tion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank,* 916 F.2d 337, 341–42 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. ANALYSIS

### A. Judicial Estoppel

Defendants argue that the May, 2005 Macomb County Circuit Court judgment that found Lucero liable for damages of $750,000 in the wrongful death of Koulta precludes the present action against the defendant officers, pursuant to the doctrine of judicial estoppel. *Motion to Dismiss* at 13. Citing *Paschke v. Retool Industries,* 445 Mich. 502, 509–510, 519 N.W.2d 441 (1994) and *Warda v. C.I.R.,* 15 F.3d 533, 538 (6th Cir.1994), they maintain that Plaintiff's present claim of constitutional violations impermissibly states a position inconsistent with the one used against Lucero in the state action. Defendants state that Plaintiff "successfully and unequivocally asserted . . . that Ms. Lucero's negligent acts were the sole cause of Plaintiff's injury," arguing that the favorable state judgment prevents her suit against them. *Motion to Dismiss* at 14.

The doctrine of judicial estoppel "operates to prevent a party who has suc-

cessfully maintained a certain position in one proceeding from asserting a contrary position in another proceeding." *Blanton v. Inco Alloys Intern., Inc.*, 108 F.3d 104, 108 (6th Cir.1997). Whether to apply the doctrine of judicial estoppel falls within the sound discretion of the Court. *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 617 (3d Cir.1996).

■ Defendants' argument for dismissal on the basis of judicial estoppel fails for a number of reasons. Defendants cite *Warda v. C.I.R. supra,* to support their argument that privity is not required to bar suit on the basis of judicial estoppel. However, the Sixth Circuit's holding actually turned on its finding that plaintiff's previous statement to a probate court that she owned a parcel of land stood diametrically opposed to her later position in the federal court attempt to stave off a lien by the Internal Revenue Service by claiming that her son, rather than she, owned the land in question. In contrast, Plaintiff's present position that the Defendant police officers were deliberately indifferent to Koulta's constitutional rights is in no way inconsistent with the state court judgment against Lucero for negligence. Plaintiff's allegations in the state action comport with the present claims. The state court complaint, which does not name the present Defendants, alleges nonetheless that the "Centerline Police Department allowed ... Lucero to continue to drive" although she was legally intoxicated and did not hold a valid driver's license at the time of her encounter with the officers. *Motion to Dismiss* at Exhibit G, ¶¶ 9–11.

Defendants reliance on *Paschke v. Retool Industries, supra,* in arguing that Plaintiff's success in the state court suit estops the federal action, is also unavailing. *Paschke* states that in addition to success in the earlier proceeding, "in order for the doctrine of judicial estoppel to apply, *the claims must be wholly inconsistent." Id.* at 509, 519 N.W.2d 441. Defendants' motion fails to establish that Plaintiff's negligence claims against Lucero in state court are inconsistent with the theory that Defendants violated Koulta's civil rights.

In addition, Defendants' *Motion to Dismiss,* which includes the two-page state court judgment against Lucero (Exhibit C), does not include the court's factual or legal basis for its finding. This Court cannot assume, based on the very limited information provided by Defendants, that the state court findings contradict Plaintiff's present position that Defendants showed deliberate indifference by failing to detain Lucero.

Moreover, Plaintiff, citing MCR 1.11(A)(2), notes that its state action position that Lucero was "a" or one proximate cause of Koulta's death "does not preclude this court from a finding in the instant action that the Defendants herein were 'the one most immediate, efficient and direct cause' of Koulta's death." *Response* at 14. In addition, the state court's determination does not vindicate Plaintiff's claim in the present case, which unlike the state claim against Lucero, alleges a deprivation of constitutional rights.[3]

## B. Qualified Immunity

■ Defendants argue that they are immune from suit on the basis of qualified

---

**3.** A supplemental response brief, filed on February 2, 2006 [Docket # 45] indicates that the state court judge recently granted present Defendants' Motion for Summary Judgment as to violations of the Michigan Constitution, but denied the motion as to negligence and gross negligence, standing at odds with Defendants' argument that the court's earlier finding that Lucero was a proximate cause of Koulta's death estopped this Court from finding liability for Defendants. *Id.* at Exhibits A, B.

immunity. *Motion to Dismiss* at 5. Citing *Sova v. City of Mt. Pleasant,* 142 F.3d 898, 902 (6th Cir.1998), Defendants maintain that their actions on the night of Koulta's death were not "objectively unreasonable." *Sova,* at 902–903. Defendants argue further that their failure to prevent Lucero from driving while intoxicated did not violate a clearly established constitutional right.[4] *Motion to Dismiss* at 3. Citing *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir.1996), Defendants maintain that the "[c]ontours of Koulta's rights were not 'sufficiently clear that a reasonable official would understand what he is doing violates that right.' " Further, citing *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 197, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), Defendants contend that their mere "failure to protect" Koulta from Lucero's actions "does not constitute a violation of the Due Process Clause." Defendants' Brief at 7.

Under *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens,* 288 F.3d 868, 876–877 (6th Cir.2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right; (2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

### 1. Constitutional Violation

In *Schroder v. City of Fort Thomas,* 412 F.3d 724, 730 (6th Cir.2005), the court found that "where a plaintiff claims that a non-custodial substantive due process violation has occurred because of the government's deliberate indifference, something more must be shown—a something that we have variously described as callous disregard for the risk of injury or action in an arbitrary manner that shocks the conscience or that indicates an intent to injure." (internal citations omitted). The court added that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.' " *Id.; County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

As a matter of law, considering the facts in the light most favorable to Plaintiff, allowing, encouraging, or ordering Lucero to drive while intoxicated amounts to a "state-created danger" which resulted in a substantive due process violation.[5] The Second Circuit in *Pena v. DePrisco,* 432 F.3d 98 (2nd Cir.2005) observed that "in various courts the term 'state created danger' can refer to a wide range of disparate fact patterns. For example, courts have used the 'state created danger' label to describe the state's duty to protect a person from private violence when the state

---

4. According to testimony taken at the preliminary examination in the criminal proceedings, Lucero claimed at the scene of the accident that she had been affirmatively directed by Defendants to leave the Centerline location. *Motion to Dismiss,* Exhibit A, *Preliminary Examination* at pgs. 50, 59.

5. A Lieutenant from the Sterling Heights Police Department testified that Lucero stated that Defendants ordered her to drive, despite her protestations. *Complaint* at Exhibit 2, *Testimony of Bruce Hamel* at pg. 50. Francis Offrink also testified that Lucero told one of the Defendant officers that she was too drunk to drive. *Plaintiff's Supplemental Exhibit List,* [Docket # 31] at Exhibit 3.

itself has placed that person at risk." Citing *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982) (Posner, J.), the *Pena* court found that "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." Likewise, in *Reed v. Gardner,* 986 F.2d 1122, 1127 (7th Cir.1993), the court found that where "defendants removed a driver, who it must be inferred was sober, and left behind a passenger, whom they knew to be drunk, with the car keys," Plaintiff had stated a sufficient basis for "a claim for deprivation of constitutional rights under 42 U.S.C. § 1983." The *Reed* court supported its holding with the premise that "[w]hile we do not seek to expand any existing duties for police officers, we do suggest that officers may be subject to suit under section 1983 if they *knowingly and affirmatively create a dangerous situation for the public and fail to take reasonable preventative steps to diffuse that danger." Id.* (emphasis added).

In the present case, Plaintiff alleges the creation (or escalation) of a situation by Defendants which surpasses the level of indifference demonstrated in *Reed.* Although Defendant Merciez testified that at one point he stood within three feet of Lucero and that she did not appear or smell intoxicated *(Motion to Dismiss* at Exhibit A, *Testimony of Daniel Merciez* at pg. 18), Plaintiff has presented a law enforcement officer's testimony that within minutes of Lucero's dispatch by Defendants, she exhibited obvious signs of intox-

ication. *Complaint* at Exhibit 2, *Testimony of Bruce Hamel,* pgs 46, 48, 49. His testimony is corroborated by another Sterling Heights police officer. *Motion to Dismiss* at Exhibit A, *Testimony of Walter Garon* at pg. 88. Defendant Merciez testified that upon his arrival at the home of Lucero's former boyfriend, after noting that Lucero's car stood in the driveway, he called police dispatch to run a lien check on the license plates. He can then scarcely deny that when he ordered Lucero (an individual whom other witnesses deemed obviously intoxicated and smelling of alcohol) from the premises approximately five minutes later, that he did not anticipate that she would leave by car. *Id.* at pg. 22.[6] Further, directly following the fatal car crash, Lucero told bystanders that Defendants forced her to leave the premises by car. *Complaint* at Exhibit 2, *Testimony of Bruce Hamel* at pg. 50. Lucero testified in deposition that one of the Defendants, after leaving the scene, returned after discovering that she had not driven away as ordered:

"He [Defendant] just told me that I had to go, move on, get over it. I got in my car, sat there. I was just sitting there crying and he—both of them left, one took off one way and the one took off another way. The next thing I know the guy comes down and does a U-turn and he comes down and says [']What is the hold up, you have 10 seconds to get out of here['] and I am like [']Oh, shit['] and so I left."

*Deposition of Chrissy Lucero* at pg. 60

Defendants rely on *Saenz v. Heldenfels Bros., Inc.* 183 F.3d 389 (5th Cir.1999), in

**6.** Defendant Merciez's incident report states that "Lucero spoke to me in a very clear manner. Lucero stated she understood that she was unwanted and agreed to leave. There was no indications that Chrissy Lucero had been drinking at the time of the call (i.e.: alcohol on her person)." *Motion to Dismiss*

*at* Exhibit D. However Merciez conceded that he wrote the incident report at eight o'clock the next morning, *after* being informed by his supervisor that Lucero had been involved in a fatal automobile accident. *Id.* at Exhibit A, *Testimony of Daniel Merciez* at pg. 35.

which the court found that an officer's failure to detain a habitual drunken driver who struck and killed another motorist minutes later did not violate the deceased's constitutional rights. *Id.* at 390. However-er, *Saenz,* is distinguishable from the present case. Saenz premised its cause of action on the officer "refrain[ing] from ar-resting a suspected drunk driver," (*Id.* at 391) whereas in the present case, Lucero testified Defendants *ordered* her to drive from the premises even after they had been informed that she was too drunk to drive. Likewise, *Cartwright v. City of Marine City,* 336 F.3d 487, 493 (6th Cir. 2003), in which defendant officers trans-ported an individual from an isolated and presumably dangerous area to a well-light-ed street corner where he was later struck and killed by a truck is inapplicable to the instant scenario. As noted by the Sixth Circuit, the defendant officers could not have reasonably believed that their acts would place the decedent in greater dan-ger:

> "Defendant officers took plaintiff from a place of great danger: the shoulder of a dark, foggy, two-lane highway. They placed him in a place of lesser danger: the parking lot of an open convenience store, where telephones, restrooms, and food and drink were available to him."

*Cartwright* 336 F.3d at 493 (6th Cir.2003). Ordering an obviously drunken individual into her car and commanding her to drive alleges a foreseeable and conscious-shock-ing menace far greater than the inactivity of the *Saenz* officers and the good faith efforts of the *Cartwright* defendants.

## 2. A Clearly Established Right

The facts presented do not merely allege a constitutional violation, but pursuant to *Saucier* and *Higgason, supra,* indicate that Koulta's rights were clearly estab-lished at the time of his death. While Defendants cite *Brosseau v. Haugen,* 543

U.S. 194, 125 S.Ct. 596, 598–599, 160 L.Ed.2d 583 (2004), to support their con-tention that the "contours" of Koulta's rights were not clearly established, *Bros-seau* actually states that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is *whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau,* 543 U.S. at 199, 125 S.Ct. at 599 (2004) (emphasis added).

Aside from the Seventh Circuit's holding in *Reed, supra,* which found constitutional violations in similar, yet less egregious cir-cumstances, the Eleventh Circuit in *Marsh v. Butler County, Alabama,* 268 F.3d 1014,1032 (11th Cir.2001), observed that "preexisting case law, tied to the precise facts, is not in every situation essential to establish clearly the law applying to the circumstances facing a public official so that a reasonable official would be put on fair and clear notice that specific conduct would be unlawful in the faced, specified circumstances." Further, "[S]ome conduct is so obviously contrary to constitutional norms that even in the absence of case law, the defense of qualified immunity does not apply." *Hammond* at 1284, *quoting Skrtich v. Thornton,* 280 F.3d 1295, 1305 (11th Cir.2002). In *United States v. Lani-er,* 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), the Court commented that "[t]he easiest cases don't even arise. There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages or crimi-nal liability." *Id.* at 271, 117 S.Ct. 1219 (*internal citations omitted*). Likewise, Defendants, whose jobs in large part in-volve administering citations for failure to comply with traffic laws, cannot claim that ordering an obviously drunken woman to leave the premises by driving away in her

automobile demonstrates anything but objectively unreasonable behavior.

 Having found that Plaintiff has alleged that Defendants' actions led to a state-created danger, I find for the same reasons as those set forth above that a genuine issue of material fact remains as to whether Defendants were a proximate cause of Koulta's death. While the facts at hand do not guarantee that Plaintiff will prevail at trial, he has presented evidence—most particularly, witness testimony—which demonstrates that Defendants are not entitled to a judgment as a matter of law.

## IV. CONCLUSION

I therefore recommend that the Motion for Dismissal or in the Alternative for Summary Judgment ( Docket No. 14) be DENIED as to Defendants Merciez, Wroblewski, and Hilla.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Feb. 16, 2006.