TURNER/OZANNE, a Joint Venture, Turner Construction Company and Ozanne Construction Company, Plaintiffs–Appellants,

and

Knight Architects, Engineers, Planners, Inc., Intervening Plaintiff–Appellant,

v.

HYMAN/POWER, a Joint Venture, George Hyman Construction Company and Power Contracting and Engineering, Defendants–Appellees.

Nos. 96–2003, 96–2059.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1996.

Decided April 17, 1997.

---

Steven B. Belgrade (argued), Kim R. Kardas, John A. O'Donnell, Belgrade & O'Donnell, Chicago, IL, for Plaintiffs-Appellants.

Christopher G. Walsh, Jr. (argued), Roger J. Guerin, Rothschild, Barry & Myers, Chicago, IL, for Defendants-Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This action arises out of an accident that occurred during the construction of a United States Post Office in Cook County, Illinois. Numerous injured employees have instituted tort suits against the construction manager contractor ("CMC"), Turner/Ozanne ("Turner"),[1] the architect, Knight Architects, Engineers, Planners, Inc. ("Knight"),[2] and the general contractor, Hyman/Power ("Hyman").[3] Each of these entities had entered into a separate contract with the United States Postal Service ("USPS") with respect to the construction of the Post Office. In the contract between Hyman and the USPS, Hyman had agreed to indemnify the USPS for claims arising from the construction of the Post Office. Turner brought this declaratory judgment action alleging that it is entitled to the benefit of this provision, despite an Illinois statute that invalidates contractor indemnity provisions. Turner contends that the indemnity provision must be interpreted under federal common law. The district court held that the provision was subject to Illinois law and therefore not enforceable. For the following reasons, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts* [4]

Turner was awarded the CMC contract with the USPS for the latter's Central Re-

---

1. Turner Construction Company is incorporated under the laws of New York and has its principal place of business in that state. Ozanne Construction Company, incorporated under Ohio law, has its principal place of business in Ohio.

2. Knight is a Delaware corporation with its principal place of business in Illinois.

3. Both Hyman Construction Company and Power Contracting and Engineering are Delaware corporations which have their principal places of business in Maryland.

4. Because this appeal comes to us from the district court's grant of Hyman's Rule 12(b)(6) motions, we accept as true the allegations in Turner's and Knight's complaints.

gion in March 1992. Under this contract, Turner agreed to act as the USPS' on-site representative for postal facilities construction in Colorado, Illinois, Indiana, Iowa, Michigan, South Dakota, Wisconsin and Wyoming. The Turner contract provides:

> The CMC shall be responsible for directing the efforts of the construction contractor [the general contractor] within the provisions of the contract documents. The Construction Management Contractor shall be responsible for exercising the professional construction judgment to interpret the contract documents and judge acceptable workmanship on behalf of the U.S. Postal Service. . . .
>
> . . . .
>
> The CMC shall be considered primarily responsible by the USPS for achieving project objectives, namely a facility constructed by the contractual completion date in accordance with the contract documents and within budget. The Construction Management Contractor shall be responsible for taking all actions within his authority to meet these objectives. . . .

R.1, Ex.A, Attach. 2, Art. 10.7, at 18. This contract also provides:

> The USPS considers the CMC a "representative" and makes no representations that it will assist the CMC in any way to assert claims against a construction contractor under the indemnity provision of the construction contract. . . . It is the responsibility of the CMC to secure and maintain the extent of liability insurance he deems necessary for his protection in the execution of this contract.

*Id.* Art. 5.1–5.2, at 11. Under this contract, Turner, as CMC, did not perform any of the construction work or hire any subcontractors to perform any construction work.

Knight contracted with the USPS to perform various architectural and engineering services in relation to the demolition and site preparation for the Post Office project.

Hyman entered into a contract with the USPS and agreed to act as the general contractor for the project. In one of the provisions of the Hyman contract, Hyman agreed to indemnify the USPS for all claims and damages arising out of the project. The indemnity provision provides:

> The contractor must save harmless and indemnify the Postal Service and its officers, agents, representatives, and employees from all claims, loss, damage, actions, causes of action, and/or expenses resulting from, brought for, or on account of any personal injury or property damage received or sustained by any persons or property growing out of, occurring, or attributable to any work performed under or related to this contract, resulting in whole or in part from the negligent acts or omissions of the contractor, any subcontractor, or any employee, agent, or representative of the contractor or any subcontractor.

R.1, Ex.B, § G.26, at 33.

On or about November 3, 1993, while the building was under construction, the structural beams collapsed, causing personal injuries to a number of the workers on the site. Some of these workers have filed suits for negligence in the Circuit Court for Cook County, Illinois against the parties to this action. Turner tendered a demand of Hyman to defend and indemnify Turner in the underlying suits; Hyman has refused.

**B. *District Court Proceedings***

Turner filed this declaratory judgment action in the district court on May 15, 1995. It alleged that it was an agent or representative of the USPS and sought a declaration that Hyman had a duty to defend and indemnify it. Turner submitted that the district court could exercise both federal question and diversity jurisdiction over the dispute. Turner alleged that federal question jurisdiction was present because it was an agent of the USPS and that therefore federal common law would govern the application of the Hyman contract to Turner. With respect to diversity of citizenship, Turner alleged greater than $50,000 in controversy—the jurisdictional amount at that time.

Hyman responded by filing a motion to dismiss. *See* Fed.R.Civ.P. 12(b)(6). Hyman submitted that Turner's allegations, even if proven, would not entitle Turner to any relief. Hyman contended that the indemnification clause was unenforceable as applied to

Turner because the clause's construction was governed by Illinois law, under which the provision is void as against public policy.

Before the district court ruled on the Rule 12(b)(6) motion, Knight sought permissive intervention, alleging that many questions of law and fact between the main action and Knight's action were similar. *See* Fed. R.Civ.P. 24(b)(2).[5] The court granted the intervention, and Knight filed a claim against Hyman seeking a declaration that Hyman has the duty to defend and indemnify Knight under the indemnification clause of the Hyman contract. Knight contended that jurisdiction was proper under the district court's federal question jurisdiction. Knight's claim was consolidated with Turner's, and Hyman filed a Rule 12(b)(6) motion to have Knight's claim dismissed as well.

The district court granted Hyman's motion to dismiss Turner's and Knight's claims. The district court recognized that the United States itself was not a party to the litigation and that therefore federal common law would apply only if a significant federal interest would be thwarted by applying state law. Guided largely by the Supreme Court's decision in *Miree v. DeKalb County,* 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977), the district court rejected the contention that the need for uniformity in the interpretation of contracts with the USPS constituted, when applied to Turner, such a significant federal interest that federal common law should apply. The court further determined that nothing in the case would affect directly the rights and obligations of the United States. Consequently, no federal interest was sufficient to require the application of federal common law, and Illinois law controlled. Because application of the Illinois Construction Contract Indemnification for Negligence Act invalidates the indemnity provision as applied to Turner and Knight, the court granted the Rule 12(b)(6) motions and dismissed both claims.

## II

## DISCUSSION

### A. *Jurisdiction*

We first must determine whether the district court had jurisdiction over these claims. Both Turner and Knight submit that the district court had jurisdiction over this dispute based on its statutory federal question jurisdiction because the case involves a question that must be resolved under federal common law. Alternatively, Turner asserts jurisdiction in the district court based on the parties' diversity of citizenship. Cognizant of the fundamental principle that federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and by statute,[6] we shall evaluate both jurisdictional bases.

#### 1.

■ Both Turner and Knight invoke the district court's statutory federal question jurisdiction, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "It is standard learning that federal question jurisdiction arises only when the complaint standing alone 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Minor v. Prudential Secs., Inc.,* 94 F.3d 1103, 1105 (7th Cir.1996) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983)), *cert. denied,* —— U.S. ——, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997). The existence of federal question jurisdiction therefore must, under the long-standing precedent of the Supreme Court of the United States, be determined from the face of the complaint. *See Bell v. Hood,* 327 U.S. 678, 680–82, 66 S.Ct. 773, 774–76, 90 L.Ed. 939 (1946). Jurisdiction under the federal ques-

---

5. Rule 24(b)(2), "Permissive Intervention," allows an individual to intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b)(2).

6. See *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *In re County Collector of Winnebago,* 96 F.3d 890, 895 (7th Cir.1996).

tion statute is not defeated by the possibility that the averments, upon close examination, might be determined not to state a cause of action. *Id.* at 682, 66 S.Ct. at 776. It is "well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.*

■ Nevertheless, the Court also has long recognized that there is one common-sense exception to this cardinal rule. A "suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83, 66 S.Ct. at 776; *accord Hagans v. Lavine,* 415 U.S. 528, 536–37, 542–43, 94 S.Ct. 1372, 1378–79, 1382–82, 39 L.Ed.2d 577 (1974) (collecting cases). Statutory federal question jurisdiction can support, of course, "claims founded upon federal common law as well as those of a statutory origin." *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *accord National Farmers Union Ins. Cos. v. Crow Tribe of Indians,* 471 U.S. 845, 850, 105 S.Ct. 2447, 2450, 85 L.Ed.2d 818 (1985); *Texas Indus. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). When the alleged federal cause of action is based on a common law claim or an implied right of action under a federal regulatory statute, our scrutiny of the allegations necessarily must be particularly careful because the constraints on viable claims in these areas are significant. Nevertheless, as Judge Boggs recently wrote for the Sixth Circuit, even when the claim is based on the common law, "the plaintiff's burden to prove federal question subject matter jurisdiction is not onerous." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1248 (6th Cir.1996). We must discern, he continued, the distinction between the "novel" and the "frivolous." *Id.* In making that distinction, he continued, we must remember that "the law is hardly static—and

a federal court has jurisdiction to hear claims on the margins of reasonable possibility." *Id.*; *see Nolan v. Meyer,* 520 F.2d 1276, 1278 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *Blaney v. Florida Nat'l Bank,* 357 F.2d 27, 28–29, 31 (5th Cir.1966).

The law of this circuit is in accord with the basic principles we have just set forth. Writing for our own court, Judge Diane Wood recently noted that, under a long line of Supreme Court decisions, a district court, presented with an allegation of "arises under" jurisdiction, ought not "accept the plaintiff's word for the proposition that federal jurisdiction exists." *LaSalle Nat'l Trust, N.A. v. ECM Motor Co.,* 76 F.3d 140, 143 (7th Cir.1996). On the other hand, she noted, "[t]hrough its choice of language, ... the Court has also made it clear that only the most extreme cases will fail the jurisdictional test of substantiality." *Id.*[7] She went on to note that, in many cases, the practical significance of this limitation on the longevity of the plaintiff's case will not be great. "Given the generosity of this standard, it is obviously possible that a plaintiff may successfully invoke federal jurisdiction, for purposes of 28 U.S.C. § 1331, and yet may lose on some other ground, such as a failure to state a claim on which relief can be granted...." *Id.*

The basic principle articulated by Judge Wood in *LaSalle* has been applied by our circuit to assertions of causes of action based on the federal common law. *See Stream Pollution Control Bd. v. United States Steel Corp.,* 512 F.2d 1036, 1040 (7th Cir.1975). Application of these principles to a particular complaint necessarily has been somewhat fact-specific, but there has been no departure from the basic rule set forth by the Supreme Court. Thus, we have affirmed district court dismissals on jurisdictional grounds of cases in which the federal interest asserted was "speculative" and "remote" and in which the suit was between private litigants over "rights to property, rights typically governed by state law." *American Invs–Co. Country-*

---

7. Judge Easterbrook recently affirmed the analogous principle with respect to diversity jurisdiction. *See Pratt Central Park Ltd. Partnership v.*

*Dames & Moore,* Inc., 60 F.3d 350, 351 (7th Cir.1995).

*side, Inc. v. Riverdale Bank,* 596 F.2d 211, 218–19 (7th Cir.1979). We have also affirmed the district court's dismissal on jurisdictional grounds when the contract in question was an agreement between two private contractors concerning the development and production of a government aircraft. *See Northrop Corp. v. AIL Sys., Inc.,* 959 F.2d 1424 (7th Cir.1992). In that case, we noted that the suit involved a dispute between parties to a "teaming contract" over whether that contract's terms required that certain work be subcontracted or retained by the prime contractor. Writing for the panel, Judge Coffey noted that there was no direct connection between the agreement at issue and the government's agreement with the prime. The government would incur no liability, and there was no indication that the suit, if decided in favor of the subcontractor, would produce a higher cost to the government. The court stressed that the "teaming contract" that formed the basis of the suit had been entered into prior to the government contract and was not a subcontract to perform work on an existing government project. Although not expressing a definitive view on whether federal common law ought to govern in the subcontract situation,[8] the court noted that there was a significant difference between such teaming contracts and subcontract situations. In the latter context, we noted, the contracts govern "actual work being performed on federal projects [and] implicate federal interests much more directly than teaming agreements entered into in the hope that they will lead to government subcontract work." *Id.* at 1428.

■ We think that our colleagues on the *Northrop* panel have discerned correctly the appropriate governing principle. What makes a federal common law contractual claim so attenuated as to fail to support jurisdiction is a failure to demonstrate, on the face of the complaint, the implication of a sufficiently proximate federal interest to require, at least arguably, the application of a federal standard. Upon examination of the complaint in this case, we believe that a principled application of the well-established rules that we have just discussed requires that we sustain the district court's exercise of subject matter jurisdiction on this basis. An examination of the complaint in this case reveals that the parties have alleged a distinctly different relationship with the federal government from the one at issue in *Northrop.* Here, the allegation is that the plaintiffs, by virtue of their status as representatives of the Postal Service in an ongoing federal construction project, enjoyed the protection of an indemnity provision negotiated by the government with its contractor. As we conclude below, we do not believe that this position, on the merits, is one that ought to prevail. However, we cannot say, to employ the language used by this court in *LaSalle,* that the allegation of federal question jurisdiction in this case is so "extreme" as to fail the well-established test for substantiality. 76 F.3d at 143.

2.

■ We note that the district court also had subject matter jurisdiction over the action commenced by Turner under its diversity jurisdiction. *See* 28 U.S.C. § 1332. "The rule is that if there are residents of the same state on both sides of a lawsuit, the suit cannot be maintained under the diversity jurisdiction even if there is also a nonresident party." *American Nat'l Bank & Trust Co. v. Bailey,* 750 F.2d 577, 582 (7th Cir.1984) (citing *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985). Here, Turner Construction Company is a corporation incorporated under the laws of New York with its principal place of business in New York. Ozanne Construction Company, incorporated under Ohio law, has its principal place of business in Ohio. On the other side of the diversity equation, both Hyman Construction Company and Power Contracting and Engineering are Delaware

---

**8.** *See United States v. Taylor,* 333 F.2d 633, 638 (5th Cir.1964) (holding federal interest sufficient in dispute between subcontractor and contractor to a federal contract to warrant application of federal law); *American Pipe & Steel Corp. v.*

*Firestone Tire & Rubber Co.,* 292 F.2d 640, 643 (9th Cir.1961) (noting that contractor/subcontractor disputes in military contracts should generally be governed by federal law).

corporations and have their principal places of business in Maryland. Thus, at the time Turner/Ozanne instituted this suit, the plaintiffs, Turner, were completely diverse from the defendants, Hyman. Turner also alleged in its complaint that the declaratory action involved an amount in controversy of greater than $50,000, thus meeting the statute's diversity requirements.[9]

■ However, nearly six months after Turner instituted this suit, Knight moved to intervene as an intervenor-plaintiff. The district court granted the motion, and Knight thereafter filed a complaint against Hyman that was consolidated into the Turner proceeding. Knight is a Delaware corporation with its principal place of business in the state of Illinois. With the intervention of Knight, there was a Delaware corporation on both sides of the lawsuit.

■ If the diversity statute were a necessary basis of jurisdiction in this case, we would be compelled to dismiss Knight from this litigation. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 830, 837, 109 S.Ct. 2218, 2221, 2225, 104 L.Ed.2d 893 (1989). Prior to the enactment of the current statute governing supplemental jurisdiction, courts permitted intervention as of right, *see* Fed.R.Civ.P. 24(a), without an independent jurisdictional basis. *See American Nat'l Bank & Trust Co.,* 750 F.2d at 582. Such cases were considered to be within the ancillary jurisdiction of the district court, and no independent basis of jurisdiction was required unless the party was a "necessary" party that ought to have been a party at the time of the original action. *See Costain Coal Holdings, Inc. v. Resource Inv. Corp.,* 15 F.3d 733 (7th Cir.1994); *see also* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3608, at 454. Permissive intervention always required an independent nexus of jurisdiction. *See Beckman Indus. v. International Ins. Co.,* 966 F.2d 470, 473 (9th Cir.), *cert.*

*denied,* 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992); *see also* 7C Wright, Miller & Cooper, *supra,* § 1917, at 464–65. Congress' passage of the supplemental jurisdiction statute, 28 U.S.C. § 1367, makes clear that the course previously followed with respect to permissive intervention must continue to be followed. Section 1367(b) precludes intervention by parties seeking to "intervene as plaintiffs under Rule 24, ... when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."

### 3.

We conclude that the district court had jurisdiction under § 1331 because the complaint alleged a federal question of sufficient substantiality to support that jurisdiction under the precedent of the Supreme Court of the United States. Alternatively, we conclude that the district court had jurisdiction over the action as originally filed because the parties are of diverse citizenship. The requisite diversity jurisdiction does not exist, however, as to Knight, and we would dismiss Knight from the case if diversity were the only basis for our jurisdiction.

### B. *Merits*

We review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996) (citing *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995) (per curiam)). Thus, like the district court, we must take all Turner's and Knight's well-pleaded factual allegations as true and construe them in the light most favorable to those parties. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). Dismissal of the complaint "is granted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995) (quoting *Conley*

9. Since the time that Turner instituted this suit, Congress has raised the requisite jurisdictional amount for the invocation of diversity jurisdiction. *See* Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 205, 110 Stat. 3847, 3850 (raising the jurisdictional amount-in-controversy requirement to $75,000, effective January 17, 1997). This change does not affect Turner's petition. *See In re Florida Wire & Cable Co.,* 102 F.3d 866, 867 (7th Cir.1996); *Gilman v. BHC Secs., Inc.,* 104 F.3d 1418 (2d Cir.1997).

*v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

■ This case requires that we determine whether federal law or Illinois law ought to govern the construction of Turner's and Knight's rights under the Hyman contract with the USPS. All parties agree that if Illinois law—specifically, the Illinois Construction Contract Indemnification for Negligence Act ("ICCINA")[10]—applies here, Hyman's 12(b)(6) motions were properly granted.

■ The principles that govern our analysis have been established. by the previous cases of the Supreme Court and of this court. The threshold rule is well established: "There is, of course, 'no general federal common law.' " *Texas Indus. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (quoting *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). Nevertheless, the Supreme Court has recognized that a "few areas, involving uniquely federal interests, are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts—so-called 'federal common law.' " *Boyle v. United Techs. Corp.,* 487 U.S. 500, 504, 108 S.Ct. 2510, 2514, 101 L.Ed.2d 442 (1988) (internal quotation and citation omitted). These limited areas comprise essentially two categories: "those in which a federal rule of decision is necessary to protect uniquely federal interests and those in which Congress has given the courts the power to develop substantive law." *Tex-*

*as Indus.,* 451 U.S. at 640, 101 S.Ct. at 2066 (internal quotation and citations omitted).

■ There is no statutory directive granting the federal courts the power to create the substantive law governing this contract dispute. We therefore must determine whether this case presents a situation in which there is a unique federal interest that requires use of a rule of decision grounded in federal common law. The analysis, the case law establishes, is a two-pronged inquiry. First, we must determine whether the matter justifies reliance on federal law to protect uniquely federal interests.[11] Second, if we decide that such reliance on federal law is justified, we must make a further inquiry[12] and "consider whether to borrow existing state law principles or to 'resort to uniform federal rules.' " *United States v. Crown Equip. Corp.,* 86 F.3d 700, 706 (7th Cir.1996) (quoting *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979)).

We turn now to the application of these principles. Turner and Knight submit that the uniform interpretation of postal contracts constitutes an area in which a uniquely federal interest is implicated. They allege that they each are agents or representatives of the USPS, and that therefore the interpretation of the contract involves obligations to and rights of the United States. Rights and obligations afforded under federal postal contracts, Turner and Knight continue, ought to be governed solely by federal law. *See United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970).

When the obligations and rights of the United States are involved, a unique federal

---

**10.** The ICCINA provides:

§ 1. With respect to contracts or agreements, either public or private, for the construction ... of a building, structure ... or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable.

740 ILCS 35/1. Section 3 creates an exception to the ICCINA for construction bonds and insurance agreements. 740 ILCS 35/3.

**11.** *See United States v. Crown Equip. Corp.,* 86 F.3d 700, 706 (7th Cir.1996) (citing *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1943)); *City of Huntsville v. City of Madison,* 24 F.3d 169, 172 n. 3 (11th Cir.1994) (citing *Miree v. DeKalb County,* 433 U.S. 25, 27, 97 S.Ct. 2490, 2492, 53 L.Ed.2d 557 (1977)).

**12.** *See Boyle,* 487 U.S. at 507, 108 S.Ct. at 2515 (stating that finding area is one of uniquely federal interest is a necessary, but not sufficient, condition for the displacement of state law).

interest is implicated. *See Boyle,* 487 U.S. at 504, 108 S.Ct. at 2514; *Texas Indus.,* 451 U.S. at 641, 101 S.Ct. at 2067; *Northrop Corp.,* 959 F.2d at 1426. It is clear, however, that this case does not implicate, in a direct manner, those considerations. The United States is not named as a party in the underlying action, nor has it sought to intervene to protect its interests. As in *Miree,* 433 U.S. at 28–29, 97 S.Ct. at 2493–94, this case does not involve a direct contractual obligation to the United States but rather the liabilities of three private entities, each of whom is in a contractual relationship with the United States. Indeed, Turner's contract with the USPS provides explicitly that the USPS makes no representations that it would assist Turner in any way to assert claims against a construction contractor under the indemnity provision. Turner also explicitly agreed to secure and maintain the extent of liability insurance it deemed necessary for its protection in the execution of the CMC contract.

Not only does the dispute at issue not affect the rights and liabilities of the United States, it does not directly implicate a federal interest that requires the protection of federal law. In *Boyle,* the Supreme Court of the United States held that an independent contractor's obligations to the United States in the procurement of specialty military equipment could implicate uniquely federal interests because the imposition of liability for specific design "defects" (that the United States approved) would directly affect the terms, specifically the cost terms, of government contracts. By contrast, Illinois law, by prohibiting a general contractor from indemnifying a CMC, does not impose necessarily greater costs on the United States in building post offices. Even if we were to assume that prohibiting general contractors from indemnifying CMCs would increase the cost of hiring CMCs, there might well be a corresponding reduction in the cost to the United States because the general contractor, not having to provide indemnification to the CMC, would submit a lower bid. Nor does reliance on state law interfere with the uniquely federal interest of national security or with the discretionary judgments of the USPS.[13] Moreover, the federal government is not liable for any damages to Hyman, Knight or Turner, regardless of the outcome of the case. *Cf. Northrop Corp.,* 959 F.2d at 1427 (finding no unique federal interest when the federal government is not liable for any damages a military contractor may owe a potential subcontractor for breach of contract). In short, nothing in the case suggests that the resolution of the contract claim would have any "direct effect upon the United States or its Treasury," *Miree,* 433 U.S. at 29, 97 S.Ct. at 2493, or that the United States has any other significant interest in this case. From Turner's own allegations, then, we conclude that any federal interest in the outcome of the question before us " 'is far too speculative, far too remote a possibility to justify the application of federal law to [this] transaction[ ].' " *Id.* at 32–33, 97 S.Ct. at 2495 (quoting *Bank of America Nat'l Trust & Sav. Ass'n v. Parnell,* 352 U.S. 29, 33–34, 77 S.Ct. 119, 121, 1 L.Ed.2d 93 (1956)).[14]

Because we conclude that no unique federal interest is involved in the interpretation of the Hyman contract's application to Turner and Knight, we need not reach the second inquiry of what the content of the federal common law would be. Federal common law

---

13. *Cf. Oliver v. Oshkosh Truck Corp.,* 96 F.3d 992, 997 (7th Cir.1996) (noting the " 'uniquely federal interest' in immunizing the trade-off between greater safety and greater combat effectiveness") (internal quotation omitted), *cert. denied,* —— U.S. ——, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997).

14. *See also Powers v. USPS,* 671 F.2d 1041 (7th Cir.1982) (holding that state law governs relations between a landlord and his tenant, the USPS); *cf. City of Huntsville v. City of Madison,* 24 F.3d 169, 172 n. 3 (11th Cir.1994) ("Federal common law is inapplicable in cases where its use would not promote a federal interest.") (citing *Miree,* 433 U.S. at 27, 97 S.Ct. at 2492);

*Northrop Corp.* (holding that when 1) government was not liable for damages, 2)there was no indication that government would pay higher price for the item, and 3) there was no evidence that the government had an interest in the adjudication, then there was no uniquely federal interest implicated); *Morgan v. South Bend Community Sch. Corp.,* 797 F.2d 471, 475 (7th Cir.1986) (noting that "when the federal government is not a party to the litigation, neutral state rules that do not undermine federal interest should be applied unless some statute (or the Constitution) authorizes the federal court to create a rule of federal common law").

simply does not govern this case; this contract's interpretation is a matter for Illinois law. Illinois law, specifically the Illinois Construction Contract Indemnification for Negligence Act, forecloses Turner's and Knight's reliance on the indemnity provision. *See GTE North, Inc. v. Henkels & McCoy, Inc.,* 245 Ill.App.3d 322, 184 Ill.Dec. 215, 612 N.E.2d 1375 (1993). Consequently, there is no relief that can be granted to Turner and Knight in this declaratory judgment action.

## CONCLUSION

For the foregoing reasons, the district court's grant of Hyman's Rule 12(b)(6) motions to dismiss was appropriate. The decision of the district court is therefore affirmed.

AFFIRMED.

