Ronald E. STEVENS, Individually and as Guardian of the Person and Estate of Bradley Edwin Stevens, a disabled person, Plaintiff–Appellant,

v.

Richard UMSTED, Defendant–Appellee.

No. 96–2071.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1997.

Decided Dec. 16, 1997.

saults, even after Umsted had actual knowledge that assaults had taken place. The district court granted Umsted's motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) finding that the first amended complaint failed to allege that Bradley was in state custody at the time of the assaults. The district court also construed the complaint as being against Umsted in his official capacity and found that the Eleventh Amendment barred Stevens's claims for damages. Additionally, the trial court stated that even if Umsted had been sued in his individual capacity he would have been entitled to qualified immunity. We affirm.

M. John Hefner, Jr. (argued), Hefner & Eberspacher, Matoon, IL, for Plaintiff–Appellant.

Rita M. Novak, Office of the Atty. General, Chicago, IL, A. Benjamin Goldgar (argued), Office of the Atty. General Civil Appeals Div., Chicago, IL, for Defendant–Appellee.

Before HARLINGTON WOOD, JR., COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Ronald E. Stevens ("Stevens"), both individually and as guardian of his son, Bradley Edwin Stevens ("Bradley") brought an action for damages pursuant to 42 U.S.C. § 1983 against Richard Umsted, the superintendent of the Illinois School for the Visually Impaired ("ISVI"). The complaint failed to specify whether Umsted was being sued in his official capacity, individual capacity, or both. Stevens claimed that while his blind and developmentally disabled son attended ISVI he was repeatedly sexually assaulted by other students. He asserted that Umsted violated Bradley's substantive due process rights under the Fourteenth Amendment by failing to protect Bradley from these as-

## I. BACKGROUND

Bradley attended ISVI, located in Jacksonville, Illinois, as a full-time resident student from at least 1984 through 1994.[1] ISVI is operated by the Illinois Department of Rehabilitation Services under the Disabled Persons Rehabilitation Act "for the education of children with visual and hearing handicaps who are unable to take advantage of the regular educational facilities provided in the community...." 20 Ill. Comp. Stat. Ann. 2405/10(a); 20 Ill. Comp. Stat. Ann. 2405/3(e); Ill. Admin. Code, tit. 89, § 750.10. The school offers instructional programs for students between the ages of 5 and 21, whose primary exceptional characteristic is a visual impairment or for individuals who are "deaf-blind." Ill. Admin. Code, tit. 89, §§ 755.40, 765.10(b). ISVI also maintains programs for students with secondary disabilities, including deficits in essential learning processes, deficits in intellectual development and mental capacity, and affective disorders or adaptive behavior which restricts effective functioning. Ill. Admin. Code, tit. 89, § 765.10(d). However, ISVI provides programs for these secondary disabilities only if the disabilities are "not so severe that the needs of the student cannot be met appropriately by the State School." Ill. Admin.

1. Although the amended complaint does not specify the age at which Bradley was admitted to ISVI, Stevens's Memorandum of Law in Opposition to Motion to Dismiss states that Bradley was seven years old at the time of his admission. (R. 11 at 1.) The amended complaint states that Bradley is an adult, however we can infer that Bradley was a child for at least most of his 10 year residency at ISVI because they only allow students between the ages of 5 and 21 to attend. Ill. Admin. Code, tit. 89, § 755.40.

Code, tit. 89, § 765.10(d). ISVI provides its service at no cost to parents. Ill. Admin. Code, tit. 89, § 760.10.

During the period Bradley attended ISVI, Umsted was the superintendent of the school. At the school, Bradley was subjected to numerous sexual assaults by an unidentified student or students of the facility. At some point not alleged, Umsted became aware of the sexual assaults. Even after Umsted had actual knowledge of the assaults, additional attacks of a sexual nature were perpetrated against Bradley. As a result of the assaults, Bradley suffered physical and emotional harm, and incurred medical expenses.

On June 12, 1995, Stevens filed a complaint alleging that Umsted had a duty to protect Bradley from further assaults and that Umsted's failure to do so violated Bradley's Fourteenth Amendment due process rights. Umsted moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. After the motion was fully briefed, the district court granted the motion but allowed Stevens an opportunity to amend. Stevens then filed a first amended complaint ("complaint") which alleged that even after Umsted had been made aware of the assaults he failed to provide Bradley with a reasonably safe environment because he did not: take reasonable steps to prevent further sexual assaults of Bradley; inform Stevens, Bradley's natural father and guardian, of the assaults; remove the perpetrators of the sexual assaults from the school; or place Bradley in a residential facility offering a more secure environment. Umsted responded by moving for dismissal for failure to state a claim or alternatively for summary judgment pursuant to Fed. R. Civ. P. 56(c), and further asserted that he was entitled to qualified immunity. On April 1, 1996, the district court granted the motion to dismiss and dismissed the action with prejudice finding that Bradley did not have a constitutional right to have Umsted protect him. The trial court further found that the Eleventh Amendment would bar Bradley's claims for damages, and that even if Umsted had been sued in his individual capacity he would be entitled to qualified immunity because no

previous case recognized the constitutional duty alleged.

On appeal, Stevens argues that Bradley's substantive due process rights were violated by Umsted's failure to protect Bradley from further assaults after he had knowledge of prior attacks, and Umsted's allowance of an environment permitting sexual assaults. Stevens also argues that Umsted is not entitled to qualified immunity. In addition, he raises for the first time in this appeal, that a duty to protect an individual from other private citizens may have arisen because the state created the danger. We affirm.

## II. DISCUSSION

### A. *Duty to Protect Under § 1983*

"This court reviews a district court's decision to dismiss a complaint for failure to state a claim de novo." *Conover v. Lein*, 87 F.3d 905, 906–07 (7th Cir.1996); *see Turner/ Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir.1997). "[L]ike the district court, we must take all [of Stevens's] ... well-pleaded factual allegations as true and construe them in the light most favorable to [him]." *Turner/Ozanne*, 111 F.3d at 1319. Dismissal of the complaint should be granted only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* at 1319–20 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). "It is true that the Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the facts upon which a claim is based. Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985).

■ "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996). Stevens argues that Umsted's failure to protect his son Bradley violated Bradley's substantive due process rights of the Fourteenth

Amendment, which states that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." Bradley undoubtedly had a liberty interest in his own physical safety. *Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (plurality) (substantive due process protects "the right to bodily integrity"); *Spiegel v. Rabinovitz,* 121 F.3d 251, 254 (7th Cir.1997) (same), *cert. denied,* —— U.S. ——, 118 S.Ct. 565, —— L.Ed.2d —— (1997); *DeShaney v. Winnebago County Dept. of Soc. Services,* 812 F.2d 298, 301 (7th Cir.1987) (same), *aff'd,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). However, Stevens's complaint failed to state a claim in that it did not allege a deprivation of Bradley's constitutional rights.

The central case defining government liability under the United State Constitution, for acts committed against individuals by private actors is *DeShaney v. Winnebago County Dept. of Soc. Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney,* a county department of social services had received several complaints that a child may have been abused by his father. Although the department took various steps to investigate the complaints and protect the child, they did not remove him from his father's custody. Ultimately the father beat the child so severely that he suffered permanent brain damage and was rendered profoundly retarded. The child and his mother brought a § 1983 action against the department arguing that it had violated the child's right to substantive due process by failing to protect him from his father's violence. The Supreme Court held that the government's failure to protect the child did not violate a constitutional right.

In *DeShaney,* the Supreme Court made clear that the Fourteenth Amendment does not require the government to prevent private citizens from harming each other. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney,* 489 U.S. at 195, 109 S.Ct. at 1002. "Its purpose was to protect the people from the State, not to ensure that the State pro-

tected them from each other." *Id.* at 196, 109 S.Ct. at 1003. The Supreme Court concluded and stated that "[a]s a general matter .... we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197, 109 S.Ct. at 1004.

Stevens's complaint was void of any allegations that government action deprived Bradley of his constitutional rights. Stevens also did not allege that Umsted, or any other agent or employee of the state of Illinois, had sexually assaulted Bradley. The complaint stated that Bradley had been assaulted numerous times by "a fellow student or students of [the] facility." (R. 14 at 2.) As the complaint alleges action by private individuals and mere inaction on the part of the government (Umsted), it appears that Bradley has not been denied a constitutional right; however, *DeShaney* and its progeny have defined exceptions to the no duty to protect rule which Stevens asserts are applicable in this case.

### B. Exceptions to No Duty to Protect

In *DeShaney,* the Court recognized two circumstances in which a state would have an affirmative constitutional duty to protect private citizens from each other. These two exceptions, discussed below, are when a state takes a person into "custody," confining him against his will, and when the state creates the danger or renders a person more vulnerable to an existing danger. *DeShaney,* 489 U.S. at 198–201, 109 S.Ct. at 1004–05. Stevens only raised the "custody" theory in the district court, but on appeal now additionally argues the "state created danger" exception.

### 1. Custody Exception

■ In *DeShaney,* the Supreme Court recognized "that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* "Initially, affirmative obligations to protect certain citizens grew out of prison situations, in which the state deprived prisoners of the liberty to care for themselves, *see Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285,

50 L.Ed.2d 251 (1976), and involuntary commitment of mental patients, for the same reason, *see Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)." *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.1993) (parallel citations omitted). The Supreme Court stated that "when the State takes a person into its *custody* and holds him there *against his will*, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199–200, 109 S.Ct. at 1005–1006 (emphasis added). The *DeShaney* Court explained that:

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. In the substantive due process analysis, *it is the State's affirmative act of restraining the individuals freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause,* not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* at 200, 109 S.Ct. at 1005 (citations and footnote omitted) (emphasis added).

*DeShaney* holds that a constitutional duty to assume some responsibility for an individual's safety and general well-being is created when the state takes an individual into "custody" and holds the individual there "against his will." *Id.* at 199–200, 109 S.Ct. at 1005–1006. This language seems to imply the requirement that the individual must be involuntarily taken into custody by the state to gain a constitutional right to protection. However, the Supreme Court also went on to suggest that, "[h]ad the State by the affirmative exercise of its power removed [the child] from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect." *Id.* at 201 n. 9, 109 S.Ct. at 1006 n. 9.

Since *DeShaney*, we have found several situations that entail a degree of restraint on an individual's personal liberty that make them sufficiently similar to the situations of incarceration and institutionalization, thereby creating a constitutional duty to protect. We held in *K.H., Through Murphy v. Morgan*, 914 F.2d 846, 849 (7th Cir.1990), that once a state removes a child from the parent's custody because of alleged sexual abuse, the child has a constitutional right not to be placed with foster parents that the state knew or suspected to be abusive. In *Camp v. Gregory*, 67 F.3d 1286 (7th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2498, 135 L.Ed.2d 190 (1996), an adolescent's Aunt and guardian requested that the state assume guardianship of the child because she believed she was unable to adequately care for him. The state agreed with this request and the court ordered the state the child's guardian by decree. We concluded that the state violated a constitutional duty to protect the adolescent when it subsequently placed him with a family member that, although not abusive, the state knew could not provide the highly structured and supervised environment the child required. However, we also found that even though the state caseworker owed a duty to protect the child, the caseworker was entitled to qualified immunity because the duty was not clearly established at the time of the events. *Camp*, 67 F.3d at 1298. *K.H., Through Murphy*, and *Camp*, illustrate the situations in which this circuit has found a duty to protect, in addition to those outlined in *DeShaney*.

In reliance on *K.H., Through Murphy*, and *Camp*, Stevens argues that Umsted had a constitutional duty to protect Bradley because he was in state custody or because the

state exercised "de facto custody" over him. However, Bradley's situation is distinguishable from these cases. First and foremost, Bradley was not taken into custody by the state. Quite the contrary, he was voluntarily admitted to the ISVI, either on the application of his school district or directly by his parents,[2] but in either instance it was with the signed consent of his parents. Additionally, the state never became the legal guardian of Bradley, and his father retained legal custody of him. Stevens concedes this in his brief on appeal. Although Bradley could not have packed his bags and left the school on his own volition, Stevens, as Bradley's parent and guardian, could have requested that Bradley be discharged at any time.[3]

Following *DeShaney*, the federal appellate courts have generally agreed that public schools are not liable for injuries to one student caused by another. *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir.1995); *Graham v. Independent Sch. Dist. No. I–89*, 22 F.3d 991, 994 (10th Cir.1994); *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir.1993); *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1373 (3d Cir.1992) (en banc); *J.O. v. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir.1990). With respect to public schools, we have stated, "[w]e do not suggest that prisoners and [involuntarily admitted] mental patients are an exhaustive list of all persons to whom the state owes some affirmative duties, but the government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises." *J.O.*, 909 F.2d at 272.

*Walton v. Alexander*, 44 F.3d 1297 (5th Cir.1995) (en banc), is the only post-*DeShaney* case to consider whether there is a duty to protect disabled students at a state-run residential school. Walton, the plaintiff, was a resident student at the state supported Mississippi School for the Deaf. Deaf students were not required to attend this school. While at the school Walton was sexually assaulted by a fellow student, and both students were suspended for three days. After the two students returned to the school they eventually ended up housed in the same building and Walton was attacked again. Just as in the case before us, Walton brought an action against the superintendent under § 1983. The Fifth Circuit stated that a constitutional duty to protect exists only "when a person is involuntarily confined or otherwise restrained against his will pursuant to a governmental order or by the affirmative exercise of state power." *Walton*, 44 F.3d at 1299. They further explained that a constitutional obligation "does not arise solely because the state exercises custodial control over an individual such as is the case when a person voluntarily resides in a state facility." *Id.* The Fifth Circuit stated that:

> Walton's willful relinquishment of a small fraction of liberty simply is not comparable to that measure of almost total deprivation experienced by a prisoner or involuntarily committed mental patient. Nor do the facts establish that the state, through its affirmative acts, held Walton at the School involuntarily and against his will. To the contrary, the record shows that Walton attended this school voluntarily with the option of leaving at will, an option that was never withdrawn.

2. Under the current Illinois Administrative Code the school district that the child resides in must make the application for admission to the ISVI. Ill. Admin. Code, tit. 89, § 755.25(a)(1). However, under the 1985 Administrative Code, it was preferred that the school district apply, but applications directly from the child's parent or legal guardian were also accepted. Ill. Admin. Code, tit. 89, § 755.90 (1985). Then, as now, it was required that all applications were signed by the child's parent or guardian. The complaint does not state the manner in which Bradley's application was submitted.

3. After August 19, 1988, the state would have to discharge a child upon the request of a parent. Ill. Admin. Code § 755.230(d) (1996). However, under the 1985 Administrative Code, Ill. Admin. Code § 755.230(e) (1985), once the parents or guardian requested the termination, the school was required to "review the student's educational status to determine whether the requested termination is in the best of interest of the student. If, pursuant to this review, a continuation of the placement is recommended by the State School, the parents may request an impartial due process hearing." Ill. Admin. Code § 795.160(b) (1985).

*Id.* at 1305.[4]

In this case, the district court concluded that it could not rely upon *Walton*'s voluntariness distinction, stating that we had discredited it in *Camp*. In *Camp*, we stated that "[w]e are unwilling to decree that simply because [a family member and guardian of the child], as opposed to the state, initiated the transfer of guardianship, under no set of facts could a state official be liable for a subsequent deprivation of due process." *Camp*, 67 F.3d at 1296. We also cited with disfavor to "a number of foster care cases [that] have stressed the involuntary character of the change in guardianship as key to recognizing a due process claim." *Id.* (citing cases including *Walton*). However, the present case is easily distinguishable from *Camp*. In *Camp*, our holding was premised on the state's appointment as legal guardian: "We believe the fact that the [Illinois Department of Children and Family Services] had been made Anthony's guardian represents a key point of distinction from *DeShaney*...." *Camp*, 67 F.3d at 1292; *but see Wooten v. Campbell*, 49 F.3d 696, (11th Cir.) (state's temporary custody of child for single purpose of arranging visitation for the noncustodial father, while child lived with mother, did not create a constitutional duty to protect), *cert. denied*, — U.S. —, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995). Unlike the situation in *Camp*, Bradley was not under the guardianship of the state. Further, in *Camp*, not only did the state have guardianship of the child, but it also took the affirmative act of placing the child in an allegedly dangerous environment. The right that we found to have been violated in *Camp* was the "due process right not to be placed by the state with a custodian whom the state knows will fail to exercise the requisite degree of supervision over the child." *Camp*, 67 F.3d at 1294. Thus, Bradley's case is distinguished from *Camp* in that Bradley was not under the guardianship of the state and the state did not affirmatively act to place the child with a custodian that it knew could not meet the needs of the child.

This case is also easily distinguishable from *K.H., Through Murphy*, as that case involved a child that the state removed from her parents and then placed with foster parents that the state knew had a propensity to be abusive. In *K.H., Through Murphy*, we approvingly noted to *Milburn by Milburn v. Anne Arundel County Dept. of Soc. Services*, 871 F.2d 474, 476 (4th Cir.1989), which "emphasizes the state's lack of responsibility for a child's voluntary placement by the natural parents in an abusing private foster home." *K.H., Through Murphy*, 914 F.2d at 849. The situation in *K.H., Through Murphy*, stands in sharp contrast to the consensual and voluntary admission of Bradley by Stevens, his parent and guardian, to the ISVI. Accordingly, *K.H., Through Murphy*, does not support Stevens's argument that Umsted violated a constitutional right in failing to protect Bradley. Further, we need not decide the relevancy of voluntariness in this case, because the state did not have custody of Bradley. Therefore, as Bradley was not in state custody, the complaint fails to allege facts sufficient to outline the existence of a state duty to protect him from private actors under the "custody" exception as outlined in *DeShaney* and its progeny. Having reached this conclusion, we are now left to determine whether Umsted had a duty to protect Bradley under the "state created danger" exception.

## 2. *State Created Danger Exception*

 We have also interpreted *DeShaney* as creating a second exception to the no duty to protect individuals from actions of private actors rule. We have stated that *DeShaney* "leaves the door open for liability in situations where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Reed*, 986 F.2d at 1125 (*citing DeShaney*, 489 U.S. at 201, 109 S.Ct. at 1006 ("While the State may have been aware of the dangers that [the plaintiff] faced in the free world, it played no part in their

4. In *Spivey v. Elliott*, 29 F.3d 1522 (11th Cir. 1994), the Eleventh Circuit reached the opposite result of *Walton* and held that a residential student had a special relationship with the state triggering the state's duty to protect, however the panel subsequently withdrew that portion of its opinion *sua sponte*, reaffirming only its ruling on qualified immunity. *Spivey v. Elliott*, 41 F.3d 1497 (11th Cir.1995).

creation, nor did it do anything to render him any more vulnerable to them.... [I]t placed him in no worse position than that in which he would have been had it not acted at all....")). In order to maintain a theory under the state created danger exception, a plaintiff must plead facts showing some *affirmative act* on the part of the state that either created a danger to the plaintiff or rendered him more vulnerable to an existing danger. In order for the state created danger theory to be available, the "state [must] *affirmatively* place[ ] a particular individual in a position of danger the individual would not otherwise have faced." *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992) (en banc) (emphasis added); *see Reed,* 986 F.2d at 1125 n. 1 (affirmative conduct is required and mere inaction is insufficient).

Stevens admits that he failed to press the state created danger argument before the trial court. In response, Umsted argues that as Stevens did not present this issue before the district court it is waived and should not be considered on appeal. *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1125 (7th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 957, 136 L.Ed.2d 843 (1997). "On numerous occasions we have held that 'if a party fails to press an argument before the district court, he waives the right to present that argument on appeal.'" *Heller v. Equitable Life Assur. Soc. of U.S.,* 833 F.2d 1253, 1261 (7th Cir. 1987) (quoting *Ohio Cas. Ins. Co. v. Bazzi Constr. Co., Inc.,* 815 F.2d 1146, 1149 (7th Cir.1987) (citing cases)). "It is axiomatic that arguments not raised below are waived on appeal." *Keene Corp. v. International Fidelity Ins. Co.,* 736 F.2d 388, 393 (7th Cir.1984).

In his reply brief, Stevens argues that, although the state created danger exception would have been waived had the district court ruled on summary judgment, the argument is not waived because this is an appeal of a dismissal for failure to state a claim. To support this assertion, he cites to *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434, 439–40 (7th Cir.1994), where we stated:

> In most circumstances a litigant who fails to raise an argument until his reply brief will be deemed to have waived that argu-

ment. *Wilson v. O'Leary,* 895 F.2d 378, 384 (7th Cir.1990). This case is before us, however, on a motion for dismissal pursuant to Rule 12(b)(6). The inquiry we are faced with is whether the plaintiff can prove any set of facts to support his allegation. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This court has held that when reviewing Rule 12(b)(6) motions, we will consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint. *See Hrubec v. National R.R. Passenger Corp.,* 981 F.2d 962, 963–64 (7th Cir.1992) (holding that a plaintiff may attempt to survive a Rule 12(b)(6) motion by adding essential new facts in a brief on appeal); *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992) (holding that a plaintiff may present unsubstantiated factual allegations on appeal, "provided [they are] consistent with the complaint, to show that the complaint should not have been dismissed."). "This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion...." *Dawson,* 977 F.2d at 372.

Stevens reiterates that the complaint alleged that Umsted both failed to remove the perpetrators of the sexual assaults and failed to place Bradley in a residential facility offering a more secure environment. He argues that these facts adequately demonstrate that he can plead a cause of action based upon the state created danger exception.

Even if Stevens had not waived the state created danger exception "[i]naction by the state in the face of a known danger is not enough to trigger the obligation [to protect private citizens from each other]" *Reed,* 986 F.2d at 1125. Stevens's complaint is phrased entirely in terms of Umsted's failure to act, and thus, does not allege an affirmative act by the state. Just as in *DeShaney,* "[t]he most that can be said of the state functionaries in this case is that they stood by and did nothing when suspicious circumstances dictated a more active role for them." *DeShaney,* 489 U.S. at 203, 109 S.Ct. at 1007.

Stevens makes much of the fact that Umsted failed to follow procedures: in the Illi-

nois Administrative Code for removing or expelling perpetrators of sexual assaults, Ill. Admin. Code tit. 89, § 755.230, and protecting the rights and safety of students, Ill. Admin. Code tit. 89, § 827.10; and in an Illinois statute requiring that the Department of Children and Family Services be informed of suspected child abuse, 325 Ill. Comp. Stat. Ann. 5/4. However, as the Supreme Court clearly stated in *DeShaney*:

> The people of [Illinois] may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one. They may create such a system, if they do not have it already, by changing the tort law of the State in accordance with the regular lawmaking process. But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment.

*DeShaney*, 489 U.S. at 203, 109 S.Ct. at 1007. Thus, Stevens's attempt to assert a state creation of danger theory is insufficient to survive a motion to dismiss for failure to state a claim.

The facts in this case are sad and troubling, for it is evident that Bradley was repeatedly sexually assaulted, even after Umsted had actual knowledge of the assaults. However, the only issue before us is whether Umsted had a constitutional duty to protect Bradley, not whether there is any remedy available to Bradley for the grievous and deplorable harm he endured. In fact, although it was not disclosed to this court until oral argument, there is currently a pending parallel action in the Illinois Court of Claims.

## C. *Qualified Immunity*

■ We also conduct a de novo review of a district court's finding of qualified immunity. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir.1995). "To determine whether a defendant is entitled to qualified immunity, however, we must determine whether he violated a clearly established constitutional right at the time he took his action." *Hill v. Shobe*, 93 F.3d 418, 420 (7th Cir.1996). "Public officials performing discretionary functions are entitled to qualified immunity

from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gustafson v. Jones*, 117 F.3d 1015, 1020–21 (7th Cir.1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). This is an objective test, therefore we must inquire as a practical matter whether a reasonable official would have understood that his actions were unlawful at the time he acted. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Kerr v. Farrey*, 95 F.3d 472, 480 (7th Cir.1996).

A qualified immunity defense is normally presented on summary judgment, but can also be presented in a motion to dismiss. *Wilson v. Formigoni*, 42 F.3d 1060, 1064 (7th Cir.1994). As the defense in this case was presented in a motion to dismiss, rather than on summary judgment, we apply the standard of review under Rule 12(b)(6), "accept[ing] as true the well-pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations." *Id.*; *see McMath v. City of Gary, Ind.*, 976 F.2d 1026, 1031 (7th Cir.1992).

■ The district court astutely noted that the complaint does not specify whether Umsted is being sued in his individual or official capacity. A § 1983 complaint that fails to specify the capacity in which the defendants are being sued is ordinarily construed to be against them in their official capacity. "In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only." *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir.1990); *see Kolar v. Sangamon County*, 756 F.2d 564, 568 (7th Cir.1985). "It is well established, of course, that any claim for damages under 42 U.S.C. § 1983 against state officials in their official capacities must be dismissed as barred by the Eleventh Amendment." *Vance v. Peters*, 97 F.3d 987, 990 n. 2 (7th Cir.1996) (citing *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 788 (7th Cir.1995)), *cert. denied*, —— U.S.

——, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997); *see Estate of Porter by Nelson v. State of Ill.*, 36 F.3d 684, 691 (7th Cir.1994).

■ However, the fact that a complaint does not state the capacity under which the defendant is being sued is not conclusive that it is only in the defendant's official capacity. *Conner v. Reinhard*, 847 F.2d 384, 394 n. 8 (7th Cir.1988). "A court must also consider the manner in which the parties have treated the suit." *Id.* The parties in this case have admittedly operated under the assumption that Umsted was being sued in his individual capacity. This assumption is supported by the defendant's raising of the defense of qualified immunity, which is applicable only in individual capacity suits. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Conner*, 847 F.2d at 394. Thus, we will honor the obvious intentions of the parties and evaluate the issue of qualified immunity as a defense to a suit brought against a government official in his individual capacity.

■ Once again, Stevens's argument is primarily based on his assertion that Umsted failed to follow the Illinois Administrative Code. However, although the violation of state laws may provide for a remedy in a state tort action, they do not clearly establish a violation of a constitutional right as required for a § 1983 action. Umsted "would forfeit his qualified immunity for liability under federal law by violating state law only if the violation of state law provided the basis for the federal cause of action." *Justice v. Town of Blackwell*, 820 F.2d 238, 243 (7th Cir.1987) (citing *Davis v. Scherer*, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984)) ("Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon."); *see Triad Associates, Inc. v. Robinson*, 10 F.3d 492, 500 n. 9 (7th Cir.1993) ("qualified immunity can only be lost if the law upon whose clear violation the denial of immunity is to be based is the law sued upon and not some other statute or regulation"). "Violations of state laws do not abrogate an official's qualified immunity from suit for violation of federal constitutional rights." *Kompare v. Stein*, 801 F.2d 883, 888 n. 6 (7th Cir.1986).

■ Stevens also argues that "the right of an individual to be free from abuse while institutionalized has existed since at least 1982." To support this assertion he cites to *Youngberg*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28; *K.H., Through Murphy*, 914 F.2d 846; and *Taahira W. by McCord–Salley v. Travis*, 908 F.Supp. 533 (N.D.Ill.1995). However, the holding in these cases are based on a finding that the individual was in state custody or involuntarily placed by the state with foster parents that the state had actual knowledge offered a dangerous environment. As we have already determined, Bradley did not have a constitutional right to be protected from actions by private actors because he was not in the custody of the state, and the state neither created the danger nor made him more vulnerable to danger. If Bradley does not even have a constitutional right to protection today, Umsted's inaction certainly did not violate "a clearly established constitutional right at the time he took his [in]action." *Hill*, 93 F.3d at 420. Thus, we also affirm the decision of the district court dismissing Stevens's complaint on the grounds of qualified immunity as well as concluding that there was no violation of a constitutional right.

### III. CONCLUSION

We affirm the district court's dismissal of Stevens's complaint pursuant to Rule 12(b)(6) for failure to state a claim and because Umsted is entitled to qualified immunity.

AFFIRMED.